14 So.2d 636

**TEXAS PIPE LINE CO. v. NATIONAL GASOLINE CO. OF LOUISIANA, Inc.**

No. 36898.

June 21, 1943.

Charles H. Blish and R. H. Ferguson, both of New Orleans, and Fred Simon, of Shreveport (Grimmet, Boatner, Simon & Carroll, of Shreveport, of counsel), for plaintiff-appellant.

W. M. Phillips, of Shreveport, for defendant-appellant.

O'NIELL, Chief Justice.

This is an expropriation suit for a right-of-way for the construction and maintenance of a gasoline pipe line through the defendant's land. The plaintiff is a common-carrier pipe-line company, and there is no dispute about its right to expropriate the right-of-way. The only dispute was and is over the value of the property expropriated and the diminution of value of the remaining and adjacent land of the defendant. The plaintiff tendered $146.50 as the value of the right-of-way and denied that there would be any diminution of the value of the remaining or adjacent land of the defendant. The right-of-way traverses the land of the defendant for a distance of 4,636.9 feet, measured along the center of the right-of-way. It bisects the land for a distance of 2,974.9 feet and traverses the east edge of the remaining land of the defendant for a distance of 1,662 feet. The right-of-way, being 20 feet

wide, has an area of 92,738 square feet, or 2.129 acres. The plaintiff's offer of $146.50 was intended to be at the rate of 50 cents per rod, and appears to be only slightly in excess of that rate. The offer is said to have been at the rate of $70 per acre, calculated on a basis of 2.093 acres, deducting the area of the highway crossing from 2.129 acres. The defendant demanded $500 an acre, or $1,046, on the basis of 2.092 acres, instead of 2.093 acres, for the value of the right-of-way, and demanded $250 per acre, or a total of $2,018.50 for diminution of value of the remaining or adjacent land, based on an area of 8.73 acres. This area embraces 50 feet on each side of the right-of-way as far as it bisects defendant's land and 50 feet on the one side of the right-of-way where it traverses the edge of the defendant's land; the contention of the defendant being, in that respect, that the very presence of the pipe line and consequent danger lessens by one-half the value of the adjacent land for a distance of 50 feet on each side of the 20-foot right-of-way. The plaintiff therefore claimed a total of $3,064.50 compensation for the value of the right-of-way plus the diminution of the value of the adjacent land. The jury of freeholders fixed the value of the right-of-way at $500, or slightly less than $250 per acre, and fixed the damage to the adjacent land at $1,000, or approximately $114.55 per acre. The judge gave judgment accordingly for $1,500. Both the plaintiff and the defendant are appealing from the judgment.

It is not possible to reconcile the testimony for the plaintiff, attempting to fix the value of the land as low as $70 per acre, with the testimony for the defendant, attempting to fix the value as high as $500 per acre. The jury of freeholders perhaps was not far off in fixing the value of the right-of-way at $500, or a little less than $250 per acre, and in fixing the diminution of the value of the adjacent land at $1,000 or approximately $114.55 per acre.

It would be difficult for us to give a convincing reason for taking issue with the jury of freeholders in estimating the value of the land. And it is not the function of the court to undertake to correct or readjust the valuation made by the jury of freeholders in expropriation proceedings except in cases where the valuation is so excessive or so insufficient as to savor of favoritism on the part of the jury of freeholders. There is no appearance of that in this case.

The land through which the pipe line extends was bought by the defendant in 1928 for the purpose of making a residence subdivision adjacent to Bossier City. It is in close proximity to Bossier City and lies on both sides of an interstate highway called U. S. Highway No. 80, and is bisected also by an old highway called Shed Road. The defendant paid $210 per acre for that part of the land on the north side of Shed Road and $225 per acre for that part on the south side of the road. Those prices were paid before Highway No. 80 was constructed across the land. Bossier City is steadily extending in the direction of the defendant's land; and the municipal utilities are already close to the land. Bossier City is a thriving city adjoining Shreve-

port, and having a population which has increased a hundred per cent in the last five years, and amounts now to 8,000 inhabitants. The defendant's land is used only as a hay meadow, but its prospect of becoming a residence subdivision soon after the war is very bright.

It is contended, of course, by the plaintiff, that the value of the 20-foot right-of-way is less than the value of the land included in the right-of-way. That is true, but there should not be much difference between the value of the right-of-way and the value of the land embraced within it, because, the rights granted to the plaintiff by the judgment appealed from virtually exclude the defendant from any use or benefit of the area covered by the right-of-way. The rights granted to the plaintiff are amplified in the judgment thus: "together with the right of constructing said pipe line in such manner as may be required, including the right to clear said right-of-way, make such excavations for such purposes, and place such materials and constructions on said property as may be necessary, with the right to maintain and operate said pipe line, when constructed, to the fullest extent required, together with the right of ingress and egress over, upon and across the said land for the purpose of constructing said pipe line thereon and of maintaining and operating the same, and for the removal of same, if and when the use thereof is discontinued".

The pipe line consists of an 8-inch pipe buried 18 inches below the surface, and is referred to as a high-pressure gasoline line, the pressure to be maintained in the pipe being approximately 750 pounds to the square inch. The testimony indicates that there is not much danger of a leak occurring in the pipe line. But the testimony leaves no doubt that the mere fact that the high pressure pipe line is there has the psychological effect of deterring prospective purchasers of the land, and of impairing thus the commercial value of the land adjoining the right-of-way. It is said in support of the plaintiff's argument that when the soil will have settled and the grass will have grown over the buried pipe line its presence will be forgotten. But there will be constant reminders of the burial place of the pipe line, and of the possible danger; because the company will maintain what they call line walkers, constantly inspecting the line to avoid the danger of leaks, and the possibility of tapping of the line. The district foreman of the plaintiff company, testifying as a witness in this case, said that the reason why the company employed line walkers was that the company had "had quite a little trouble during recent years in that the lines have been tapped by parties unknown".

A witness who had been in the real estate business for 30 years and who was a member of the national association, as well as of the state and local associations, and who had had many dealings in real estate in and near Bossier City, testified that the defendant's land was worth $500 per acre. He supported his testimony by reference to several sales which he had made of lots in the vicinity of the defendant's land at prices higher than $500 per

a‹re. He had had experience with' regard to residence subdivisions traversed by pipe lines, and he testified that he had had great difficulty in persuading people to buy lots adjoining or in close proximity to pipe lines. He explained that in some instances the pipe line company would place danger signs over the line, giving warning of the presence of a high pressure pipe line; and the witness related instances of the aversion which prospective buyers had to buying a homesite near a pipe line—and especially a high-pressure gasoline pipe line. The argument for the plaintiff that there is no real danger or reason for such fear has no force against the fact that the fear exists and is unavoidable. The fear of danger in some cases is as bad as the danger itself—it is a condition—not a theory.

The witness whom we have referred to testified that from his experience he believed that the presence of such a big-inch gasoline pipe line would destroy completely the sale value of the defendant's land within the distance of 50 feet from the right-of-way. The jury of freeholders evidently tempered that estimate of the diminution in value with the more conservative estimates of other witnesses, and found the net result to be a loss of half of the value of the adjacent land within a distance of fifty feet from the pipe line.

Our conclusion is that the estimate and verdict of the jury ought to stand.

The judgment is affirmed; the costs of appeal are to be borne equally by the plaintiff and the defendant, and all other costs are to be borne by the plaintiff.