159 So.2d 738 (1964)
CENTRAL LOUISIANA ELECTRIC COMPANY, Inc., Plaintiff and Appellant,
v.
Percy J. FONTENOT, Defendant and Appellee.
No. 1025.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1964.
Rehearing Denied February 6, 1964.
*739 Landry, Watkins, Cousin & Bonin, by Jack J. Cousin, New Iberia, and Robert F. DeJean, Opelousas, for plaintiff-appellant.
Fusilier, Pucheu & Soileau by L. O. Fusilier, Ville Platte, for defendant-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
HOOD, Judge.
This is an expropriation suit in which plaintiff seeks to obtain a right of way or servitude for the purpose of constructing an electric power transmission line over and across property owned by defendant. The only questions presented relate to the value of the property taken and the damage, if any, to the remainder of defendant's land.
After trial on the merits, the trial judge concluded that the tract taken had a value of $4,118.50, and that defendant would sustain severance damages in the amount of $19,088.15 as a result of the taking. Judgment accordingly was rendered awarding defendant the sum of $23,206.65. Plaintiff has appealed.
Defendant owns approximately 2,600 acres of land in Evangeline Parish, located about eight miles northeast of the City of Ville Platte. A portion of this property, consisting of about 1,000 acres in Sections 11 and 13, Township 3 South, Range 2 East, is flat, river bottom land which is suitable for farming rice as well as for grazing purposes. The remainder of the 2,600-acre tract is hilly, partially wooded property, not suitable for rice farming purposes.
The servitude which plaintiff seeks here covers a strip of land 100 feet wide and 7,133 feet long, running diagonally across the flat 1,000-acre farm land portion of defendant's property. The center line of the servitude enters defendant's property at a point on the north edge of this 1,000-acre tract, and from that point it runs diagonally in a southeasterly direction, across portions of Sections 11 and 13, to the southern boundary of that tract. It embraces an area of 4.34 acres in Section 11, and 13.87 acres in Section 13, making a total of 18.21 acres actually covered by the right of way.
The judgment rendered by the trial court provides that the servitude is granted for the purpose of constructing, maintaining, repairing and operating an electric transmission line, "consisting of a line of double pole structures, with such wires, cables and other appurtenances thereto as may be necessary or convenient for the transmission of electric energy." Representatives of the plaintiff expropriating authority testified that plaintiff intends to construct on this right of way a line of "H-framed" structures or poles about 55 feet in height and spaced about 700 feet apart. Each "H-framed" structure will consist of two wooden poles 14 feet apart and connected by crossarms. The transmission lines attached to these poles are to be suspended 25 or 26 feet above the surface of the ground, and the line is expected to carry a maximum voltage of 138,000 volts.
Plaintiff contends that the trial court erred in determining the value of the fee title of the property affected by this servitude. It argues that the values fixed by the trial judge are excessive and are not supported by the evidence.
Two expert real estate appraisers and a number of neighboring landowners were called by and testified in behalf of defendant as to the value of the property affected by the servitude and as to the severance damages to the remaining land. Both of these experts testified that in their opinion the market value of 600 acres of defendant's farm land, being the portion of his property located in Section 13, had a value of $300.00 per acre, and that the remaining 400 acres of the farm land, being the portion located in Section 11, was valued at *740 from $100.00 to $200.00 per acre. Two expert real estate appraisers called by plaintiff testified that in their opinion the 600-acre tract in Section 13 had a value of $175.00 per acre, and that the 400 acres in Section 11 had a value of $100.00 per acre.
The trial judge concluded that at the time of the taking the 600 acres in Section 13 had a value of $250.00 per acre, that 100 acres in Section 11 had an acreage value of $150.00, and that 300 acres in Section 11 had a value of $100.00 per acre. He found that the 4.34-acre tract in Section 11 covered by the servitude had a value of $150.00 per acre, and that the 13.87-acre tract in Section 13 had a value of $250.00 per acre. On that basis he concluded that the fee value of the entire 18.21 acres embraced within the right of way was $4,118.50. He allowed the defendant the full value of the fee title for the servitude which was taken.
The established rule is that the testimony of each expert should be given effect if that testimony appears to be well grounded from the standpoint of sincerity and good reasoning. State, Through Department of Highways v. Stoer, 238 La. 718, 116 So.2d 498; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; State, Through Department of Highways v. Hub Realty Company, 239 La. 154, 118 So.2d 364.
In the instant suit it is apparent that the trial judge considered the testimony of all of the experts. In his excellent reasons for judgment he pointed out that the two appraisers who testified in behalf of defendant were thoroughly familiar with lands in Evangeline Parish, whereas the two appraisers who testified in behalf of plaintiff were not residents of that parish and were not familiar with real estate values in that area. We note that the appraisers called by plaintiff specifically listed other sales of property which they considered to be comparable and which they used in fixing the value of defendant's land, whereas the experts called by defendant did not specifically list any other comparable sales. But, as pointed out by the trial judge, the comparable sales which plaintiff's appraisers used were not rice farming properties and the lands conveyed by those sales differed in other respects from the property involved here.
The evidence shows that defendant acquired all of this property by several separate transactions shortly before the taking and that he has spent at least $90.00 per acre in clearing most of the 600-acre tract located in Section 13 in order to make it suitable for rice farming purposes. Also, at the time of the taking he was engaged in some clearing operations on the affected property located in Section 11. The trial judge considered the purchase prices paid by defendant for the property and the expenses which he had incurred in these clearing operations.
In our opinion the evidence supports the conclusions reached by the trial judge as to the value of the fee title of the property affected by this servitude.
We think the trial judge did err, however, in finding that the 4.34-acre tract in Section 11 which is embraced in the servitude had a value of $150.00 per acre. The testimony of defendant's expert, Gilbert Vidrine, as well as that of defendant himself, shows that the servitude traverses only that part of the land in Section 11 which the trial judge found to have a value of $100.00 per acre. The fee title to that 4.34-acre tract, therefore, had a value of $434.00 instead of $651.00, as found by the trial court. The value of the fee title to all of defendant's property which is embraced in this servitude accordingly must be reduced from $4,118.50 to $3,901.50.
Plaintiff contends further that the trial court erred in allowing defendant the full value of the property included within the servitude. It is argued that since the defendant will retain some use of the property affected by the servitude, something less than the full value of the land should be allowed.
*741 The judgment rendered by the trial court specifically provides that defendant is to retain some use of the property embraced within the servitude, including the right to fence the whole or any part of the right of way and to place on such property streets, sidewalks, passageways, telephone lines and other utilities, as said defendant may desire. And, the defendant testified that he expects to continue farming the property included within the easement.
It has been established that where only a servitude or easement is expropriated, and the landowner will continue to have some use of the property included within the right of way, the servitude taken should be valued at a percentage of the fee value of the land and not at its full value. See Colonial Pipeline Company v. Babineaux, La.App. 3 Cir., 154 So.2d 594; Louisiana Power and Light Company v. de Bouchel, La.App. 4 Cir., 143 So.2d 270; Gulf States Utilities Co. v. Callahan, La. App. 1 Cir., 65 So.2d 608; and Texas Pipe Line Co. v. Johnson, 223 La. 380, 65 So.2d 884, 38 A.L.R.2d 785. However, where the expropriation of a servitude completely destroys the suitability of the land for the purposes for which it is best suited, it is proper to award the landowner the full fee value even though merely a servitude is expropriated. Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So. 2d 251; Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636.
The defendant produced no evidence as to the value of the servitude as distinguished from the value of the fee title to the property affected by it. The expert real estate appraisers called by plaintiff, on the other hand, testified that since defendant would continue to have substantially the same use of the property affected by this servitude as he formerly had, the servitude taken should be valued at an amount not in excess of 50 percent of the value of the fee title to the property.
Although the defendant will not be able to erect buildings or permanent structures on the 100-foot right of way, it is apparent from the evidence that he will continue to have the use of the property for farming and grazing purposes, being the uses for which it is best suited. We cannot agree with the trial judge, therefore, that the land burdened with this servitude would be absolutely worthless to the landowner. In our opinion the value of the servitude taken by plaintiff should be fixed at 50 percent of the value of the fee title to the land. The judgment appealed from should be amended, therefore, to show the value of the servitude taken to be 50 percent of $3,901.50, or $1,950.75.
Plaintiff contends that the evidence fails to establish that the remainder of defendant's property will be damaged as a result of the taking, and accordingly that the trial judge erred in allowing defendant severance damages.
The real estate appraisers called by defendant testified that the construction of an electric power transmission line across defendant's property will damage the remainder of the 1,000-acre tract which is suitable for rice farming. They explain that such a line, with poles extending 55 feet above the ground, will prevent satisfactory aerial spraying, planting and fertilizing of crops on this tract, and for that reason the construction of such a line will render the remainder of the property less desirable for rice farming purposes. One of these experts is of the opinion that the market value of the 600-acre tract located in Section 13 would be reduced $50.00 per acre as a result of the taking, and that the 400-acre tract in Section 11 would be reduced in value $25.00 or $30.00 per acre. The other appraiser called by defendant testified that the granting of such a servitude would reduce the market value of the entire 1,000-acre tract by 10 percent.
Several neighboring landowners confirmed the testimony of these experts to the effect that the construction of a transmission *742 line over the right of way taken here would materially reduce the market value of the remainder of defendant's farm land. Also, the manager and part-owner of an agricultural flying service testified that it would be difficult, if not impossible, to properly spray, plant or fertilize defendant's farm land aerially after the construction of the transmission line, and that his firm does not guarantee "anything" where aerial spraying, planting or fertilizing operations are conducted near such a transmission line.
The appraisers called by plaintiff were of the opinion that the construction of such a line across this property would not cause defendant's remaining farm land to be damaged at all. Although they concede that the existence of a transmission line on rice farming lands would prevent planes from flying as low as necessary to conduct satisfactory aerial agricultural operations, they testified that there are trees located on the property involved here which would prevent satisfactory aerial services even though a transmission line were not constructed.
The trial judge determined that the market value of defendant's 1,000-acre tract of farm land would be decreased 10 percent as a result of the taking. We think the evidence supports that conclusion, and accordingly we hold, as did the trial judge, that defendant is entitled to severance damages amounting to 10 percent of the value of the remainder of his farm land.
The trial judge correctly found that the 1,000 acres of farm land had a value of $195,000.00 prior to the taking. After deducting from that amount $4,118.50, being what he found to be the fee value of the property taken, he computed the severance damages to be $19,088.15. We have concluded that the fee value of the property taken is $3,901.50. By deducting that amount from the value of the 1,000-acre tract prior to the taking, we find the value of the remaining property prior to the taking to be $191,098.50. Ten percent of that figure amounts to $19,109.85.
In our opinion the defendant is entitled to an award of $1,950.75 for the taking, and $19,109.85 as severance damages, making a total award of $21,060.60. The judgment appealed from should be amended by reducing the award to that amount.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount of the award to defendant from $23,206.65 to the sum of $21,060.60. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.

On Application for Rehearing
En Banc. Rehearing denied.