198 So.2d 453 (1967)
TEXAS GAS TRANSMISSION CORPORATION, Plaintiff-Appellant,
v.
Dr. Robert J. YOUNG, Jr., et al., Defendants-Appellees.
No. 1952.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1967.
*454 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, by Charles W. Lane, III, New Orleans, Broussard & Broussard, by Paul Moresi, Jr., Abbeville, for plaintiff-appellant.
Kizer, Heaton, Craig & Cangelosi, by Frank S. Craig, Jr., Baton Rouge, for defendant-appellee.
Before CULPEPPER, SAVOY and HOOD, JJ.
HOOD, Judge.
The plaintiff, Texas Gas Transmission Corporation, instituted this suit to expropriate a permanent right of way and two temporary rights of way on and across property owned by defendants, Dr. Robert J. Young, Jr., and Mrs. Beverly Young Craig, for the construction of a natural gas pipeline. Judgment was rendered by the trial court granting plaintiff the servitudes which it sought, and awarding compensation and severance damages to defendants. Plaintiff has appealed contending that the awards should be reduced, and defendants have answered the appeal praying that the amount awarded as severance damages be increased.
Defendants own a 56-acre tract of land located about two and one-half or three miles west of the City of Abbeville, in Vermilion Parish. It is an elongated tract, almost rectangular in shape, the north and south boundaries being about one mile in length and the east and west boundaries being only about 500 feet long. Access to and from the property is provided by a gravel road which runs along the 500-foot west boundary of this tract and connects with Louisiana Highway 14 at a *455 point about one-fourth mile north of the subject property. Prior to and at the time of the expropriation this property was being used as pasture land, and there were no improvements on it, except for two oil tanks and a gas well.
The permanent right of way or servitude which is being expropriated is a strip of land 50 feet wide, running generally north and south across defendants' property, and bisecting the parent tract at a point about 1600 feet east of its west boundary. This right of way comprises a total of 0.57 acres of land. In addition to the permanent right of way, plaintiff also is expropriating a temporary right of way and a temporary working space on the parent tract. The temporary right of way comprises 0.18 acres and it consists of two 8-foot strips of land running along each side of and adjoining the permanent servitude. The temporary work space comprises 0.17 acres and it consists of two small areas, one being 37 feet and the other 47 feet in width, on each side of the permanent right of way, near the north boundary of the parent tract. The two temporary servitudes which are being expropriated will cease to exist after construction of the pipeline has been completed. No issue is raised here as to the right of plaintiff to expropriate these servitudes.
Plaintiff plans to lay a 20-inch high pressure gas pipeline on and along the strip of land included in the permanent right of way. It will be buried to a depth of at least 30 inches below the surface, and plaintiff is obligated to grade and level the trench after construction has been completed and to refill and relevel it as needed. Plaintiff will remove all trees and undergrowth from the right of way, but there is reserved to defendants the right to use the property affected in any way they see fit so long as their use is not inconsistent with the rights granted.
After trial, judgment was rendered by the trial court awarding the defendants $570.00 as compensation for the permanent servitude taken, $35.00 as compensation for the temporary right of way and temporary working space expropriated, and $1500.00 as severance damages. On this appeal plaintiff contends that the award made as compensation for the property taken should be reduced and that defendants' demands for severance damages should be rejected completely. Defendants, in answering the appeal, pray that the amount awarded as severance damages be increased.
Maurice Chappuis and Robert Duhon testified as expert real estate appraisers in behalf of plaintiff. William D. Gooch testified as a qualified expert appraiser for defendants, and it was stipulated that if Lawrence Laporte, who admittedly has the same qualifications to testify as an expert appraiser as are possessed by Gooch, had been called as a witness by defendants his testimony would have been similar to that of Mr. Gooch as to the values placed on the property and as to severance damages.
The two appraisers who testified for plaintiff felt that the highest and best use of the property was for "suburban rural acreage." They used the market data approach in determining the value of defendants' property, and each concluded that at the time of the taking the property had a fee value of $520.00 per acre. They thought the permanent servitude being taken should be valued at $400.00 per acre, or between 75 and 80 percent of the fee value of the property. Both of these appraisers agreed that the permanent servitude being expropriated, comprising 0.57 acres, had a market value of $228.00 at the time of the taking. Chappuis valued the temporary servitudes at ten percent of the fee value, concluding that the total value of both temporary servitudes is $18.20. Duhon valued the temporary servitudes at $50.00 per acre, or a total of $17.50 for both such temporary servitudes.
Gooch, who testified in behalf of defendants, considered the highest and best use of the property to be for "industrial purposes." He used the market data approach in determining the value, but he testified that he also based his conclusions as to value "on *456 potential things that are in plans to be done in that area." He explained that by this last quoted statement he was referring to a study of potential industrial sites in the area which was made by Gulf States Utilities Company, in which study he participated, and by the Abbeville Harbor and Terminal District, he and Mr. Laporte being members of the Board of Commissioners of that district. He concluded that at the time of the expropriation defendants' property had a value of not less than $1000.00 per acre and not more than $1500.00 per acre. He expressed no opinion as to the value of the permanent right of way or of the two temporary servitudes which were taken.
As we have already pointed out, it was stipulated that Mr. Laporte would have testified substantially to the same effect as did Mr. Gooch.
The trial judge concluded that defendants' property "might reasonably be developed into either suburbal rural or commercial" property, and that it had a value of $1000.00 per acre at the time of the taking. He also concluded that the full fee value of the property should be awarded for the permanent servitude taken because "the use of the area by defendants is somewhat interfered with," and he thus awarded defendants $570.00 for the 0.57-acre servitude. The trial judge also held that defendants are entitled to recover ten percent of the fee value of the property included in the two temporary servitudes taken. These two servitudes affect a total area of 0.35 acres, so $35.00 was awarded as compensation for them.
We have considered the evidence, and we find no error in the trial judge's conclusion that the subject property had a value of $1000.00 per acre at the time of the expropriation. We cannot agree with the trial judge, however, in his conclusion that defendants are entitled to an award of the full fee value of the property for the permanent servitude taken. The experts who testified for the plaintiff felt that the permanent servitude should be valued at between 75 and 80 percent of the fee value of the land, and the other expert witness who testified expressed no opinion at all as to the value of that servitude. The judgment which was rendered by the trial court awarding the permanent servitude to plaintiff specifically reserved to defendants the right to use the property in any way not inconsistent with the rights therein granted, including the right to cross the servitude with any other easement, sewer line, pipeline, road, street, canal or railroad. We think the right of the landowner to use the servitude area for the above mentioned purposes, as well as for pasturage, agricultural and other purposes, has some substantial value. Our conclusion is that an award of 75 percent of the fee value of the property would be fair and adequate as compensation for the permanent servitude which was taken. See Colonial Pipeline Company v. Babineaux, 154 So.2d 594 (La. App. 3rd Cir. 1963); and Texas Gas Transmission Corporation v. Broussard, 196 So.2d 620 (La.App. 3d Cir. 1967). The award of $570.00 as compensation for the permanent right of way, therefore, must be reduced to $427.50. We concur in the award of $35.00 made by the trial court for the temporary servitude which was taken.
The only remaining issue to be determined relates to the award which was made by the trial court for severance damages.
The two appraisers who testified in behalf of plaintiff were firm in their opinions that defendants' remaining property would not be damaged or depreciated in value by the taking of this right of way or by the construction of a high pressure gas pipeline across this property. Mr. Chappuis based his conclusion to that effect largely on the fact that a number of residential lots in a subdivision in Lafayette sold for exactly the same price after a high pressure gas line had been located within 200 feet of them as they did before the pipeline was located there.
Mr. Gooch, the expert who testified for the defendants, was of the opinion that the *457 construction of the pipeline across defendants' property would cause a 15 percent decrease in value to 15 acres on the east side of the permanent right of way and to 20 acres on the west side of that servitude. He based that conclusion on two factors: (1) He felt that "it is dividing this property to some extent;" and (2) he felt that a prospective purchaser would offer a reduced price for the property after the construction of the pipeline "because of the fear of this high pressure line." As already noted, we assume that Mr. Laporte would have testified to the same effect if he had been called.
The trial judge found that the construction of the pipeline would have some effect on the value of defendants' remaining property, but he concluded that there would be a 15 percent diminution in value of only five acres on each side of the proposed pipeline. Having concluded that the property had an original value of $1000.00 per acre, he awarded defendants $1500.00 as severance damages to ten acres of the remaining property.
When property is expropriated the owner is entitled to compensation for damages to his remaining land caused by the taking. The measure of such severance damages is the difference between the value of the remaining property immediately before and its diminished value immediately after the expropriation. Gulf States Utilities Company v. Cormier, 182 So.2d 176 (La.App. 3d Cir. 1966).
The severance damages to the remaining property cannot be presumed, and such damages will not be awarded unless the owner shows by competent evidence that the value of his remaining land has been diminished by the taking. State, Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1962); State, Department of Highways v. Dodge, 168 So.2d 430 (La.App. 3d Cir. 1964).
It has been recognized in a number of cases that the construction of a high pressure gas pipeline across a tract of land may have the effect of diminishing the market value of that portion of the remaining property which lies in close proximity to that pipeline, because of the dangerous potentialities of such a line and the fear which prospective purchasers may have of such danger. United Gas Pipe Line Co. v. New Orleans Term. Co., 156 So.2d 297 (La.App. 4th Cir. 1963); Texas Pipe Line Co. v. National Gasoline Co., 203 La. 787, 14 So.2d 636 (1943); United Gas Pipe Line Co. v. Nezat, 136 So.2d 76 (La. App. 3d Cir. 1961); Texas Pipe Line Company v. Langlinais, 168 So.2d 377 (La.App. 3d Cir. 1964).
In the instant suit, we cannot say that the trial judge erred in holding that the construction of this pipeline would have the effect of decreasing by 15 percent the value of five acres of defendants' property located on each side of the pipeline right of way. We do not agree with defendants that more than ten acres of their remaining land will be diminished in value by the construction of this pipeline.
For the reasons herein set out, therefore, the judgment appealed from is amended by reducing the award made to defendants "for the permanent right of way," from $570.00 to the sum of $427.50. In all other respects, and as thus amended, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Amended and affirmed.