207 So.2d 368 (1967)
TEXAS GAS TRANSMISSION CORPORATION, Plaintiff-Appellant,
v.
Woodley HEBERT, Defendant-Appellee.
No. 2123.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1967.
On Rehearing January 18, 1968.
Dissenting Opinion January 24, 1968.
Rehearing Denied February 7, 1968.
*369 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, by Lucius F. Suthon, New Orleans, for plaintiff-appellant.
McBride & Brewster, by William L. Brewster, Lafayette, for defendant-appellee.
Before FRUGEé, SAVOY, and LEAR, JJ.
LEAR, Judge.
Texas Gas Transmission Corporation, a Delaware corporation, authorized to do and doing business in the State of Louisiana and operating under a certificate of public convenience and necessity issued by the Federal Power Commission, embarked upon the construction of a 20-inch high-pressure natural gas pipeline, referred to as the Maurice-Freshwater Bayou Line.
*370 Being unable to conventionally acquire a servitude across defendant's land, it resorted to this expropriation suit.
The trial court had little difficulty in ruling that petitioner had the power to acquire rights-of-way by expropriation. This court agrees with and affirms that ruling. See L.R.S. 19:2(7).
Neither the necessity for this particular pipeline nor the situs of the servitude was at issue in the district court and, accordingly, is not at issue here.
The trial court established values of that acreage included within the servitude itself, the value of a temporary right-of-way to be enjoyed by petitioner only during the course of construction, severance damages to the remainder of defendant's property and set expert fees for certain witnesses.
Petitioner, objecting to the judgment a qua as it related to values and damages, perfected appeal to this court.
Defendant's 77 acres to be traversed by this pipeline lies approximately eight miles south of the City of Lafayette and approximately one-half mile west of Louisiana Highway 167. When viewed on the map, the property is somewhat in the shape of an inverted "U", the legs of the "U" fronting on a public road. The proposed 50-foot servitude runs generally northeast-southwest and traverses the northwest corner of defendant's property, not, however, interfering with his road frontage.
This property has always been devoted to agricultural pursuits, but as is invariably the case in matters of this sort, the various experts were widely divergent as to the evaluation of the land. The reason for this divergence is the presence of the `highest and best' rule used in assessing value of property taken by eminent domain.
Louisiana Civil Code Article 2633 provides that the basis of the assessment shall be the true value which the land possessed before the contemplated improvement was proposed. In construing value, the courts have always followed the rule set down in State v. Dowling, 205 La. 1061, 18 So.2d 616, wherein the Supreme Court considered true value to be synonymous with market value and defined market value as the "* * * fair value between one who wants to purchase and one who wants to sell under usual and ordinary circumstances." This concept is seemingly simple and uncomplicated and susceptible to ready application, but is further complicated by the doctrine as expressed in City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675, 678, wherein it was announced that in considering the market value of property there must be taken into consideration the use to which the property may be applied and all the uses to which it is adapted. Of course, this adaptability (the property's best and highest use) must not be remote but must be the use to which the land may reasonably be put in the not too distant future.
Mr. Maurice Chappuis testified on behalf of plaintiff as an expert real estate appraiser. He classified the highest and best use of the property as `suburban rural acreage'. He admits that this term is not subject to exact definition, but after discussing comparable sales in the general area and analyzing various factors affecting property values in that area, he reached a conclusion that the subject property would have a market value of $750.00 per acre.
Mr. George Parker was also an expert realtor called by plaintiff. He stated that the highest and best use of the property was agricultural, with the exception that the portion of the property fronting on the road could be classified as rural residential. After making his comparisons of like properties and analyzing the other factors involved, he decided that the land would be worth approximately $600.00 an acre.
The defendant called Mr. Gordon Hamner who was accepted as an expert appraiser. He testified that the property fronting on the road should be valued at *371 approximately $2,000.00 an acre, whereas the property to the rear would be considered high-priced farm land and valued at $1,000.00 an acre.
Mr. Preston Babineaux was accepted as an expert realtor and appraiser on behalf of defendant. He considered the highest and best use of the property as suburban development. He agreed with Mr. Hamner on values.
The trial court concluded `with little difficulty' that the property in question was not, at the time of the condemnation, being put to its highest and best use. He considered the growth factor in Lafayette Parish with its concomitant demand for homesites in the suburban and rural areas near the City of Lafayette, Louisiana, and concluded that the highest and best use to which this property can be put is suburban residential. Thereupon, he agreed with defendant's experts and established an evaluation of $1,000.00 an acre on the land in question. This court feels such a valuation to be generous. However, in the absence of any manifest error on the part of the trial court and in deference to its superior knowledge of local conditions, taken with the fact that he had the opportunity to personally hear and observe the witnesses, we concur in his conclusion.
Finding .9 of an acre encompassed within the boundaries of the permanent servitude, the trial court awarded defendant the sum of $900.00, saying:
"The Court concludes that there is little difference between the value of a right-of-way in a case of this kind and the land acquired in it, and consequently the Court will place full value on the said right-of-way."
Though the author of this generality can find comfort in the pronouncement of Chief Justice O'Neill to the effect that there is not much difference between the value of the right-of-way or servitude and the land embraced in it (Texas Pipeline Co. v. National Gasoline Co., 203 La. 787, 14 So.2d 636), this court feels that the announced principle is not now the law of the land. See Colonial Pipeline Co. v. Babineaux, La.App. 3 Cir., 1963, 154 So.2d 594; Texas Gas Transmission Corp. v. Broussard, La.App. 3 Cir., 1967, 196 So.2d 620. Following the formula announced in those cases, we find that the judgment of the district court should be amended to provide that the plaintiff should be cast in judgment in the amount of 75% of $900.00 or the sum of $675.00.
The trial court next considered the problem of severance damages. It concluded that 11 acres of the defendant's property suffered a diminution in value as a result of the installation of this 20-inch natural gas high-pressure line, causing "fright, fear and frustration to some prospective purchasers". This type of severance damage, though extremely difficult of proof to any exactitude, has been almost universally recognized by our courts. See Texas Pipeline Co. v. National Gasoline Co., (1943), 203 La. 787, 14 So.2d 636; Broussard, supra; Texas Pipeline Co. v. Langlinais, La.App. 3 Cir., 1964, 168 So.2d 377; Texas Gas Transmission Corp. v. Young, La.App. 3 Cir., 1967, 198 So.2d 453.
Though the conclusion by the trial judge to the effect that an additional 10.1 acres over and above the property actually included within the servitude suffered severance damage in the amount of 40% of value, we do not find that he is manifestly in error and, as said in Broussard, is within the range of his discretion in cases of this type. We, therefore, concur with our learned brother on the trial bench, insofar as the award of severance damages is concerned, but we must disagree with the formula he used in the computation thereof. Using his conclusion that 10.1 acres, valued at $1,000.00 per acre, suffered a severance damage of 40%, then the amount of the severance damage award comes to $4,040.00 rather than the $3,500.00 *372 awarded by the district court. With this change in computation we will amend, and as amended, affirm the judgment appealed from in this respect.
Petitioner prayed for the condemnation of a temporary servitude to be used as a work area by it during the course of construction. The trial court awarded defendant the sum of $100.00 as compensation therefor. Petitioner makes a strong case to the effect that this award is not justified. However, finding no manifest error in our brother's conclusion and recognizing the fundamental proposition that short-term occupancy commands a higher rental value, if it can be categorized as such, than a stable, long-term lease, we affirm his conclusion.
That portion of the judgment awarding fees to defendant's experts, Messrs. Hammer and Babineaux, and fixing certain witness fees is also affirmed.
Judgment amended, and as amended, affirmed.

On Rehearing
En Banc.
SAVOY, Judge.
We granted a rehearing in this case pursuant to an application for same made by appellant.
Appellant contends that the judgment of this Court rendered October 27, 1967, amended the judgment of the district court in that the judgment increased the amount of severance damages awarded to appellee from the sum of $3,500.00 to the sum of $4,040.00, and is erroneous and contrary to law.
This is an expropriation proceeding in which the district court granted appellant the right to expropriate appellee's property and granted, among other sums, the sum of $3,500.00 to appellee for severance damages. Appellant appealed to this Court solely on the quantum awarded by the district court. Appellee did not appeal, nor did he answer the appeal.
This Court, on the original hearing, found that the trial judge had made an error of calculation and increased the award as aforesaid.
In connection with the award for severance damages, we hereby quote from the opinion of the trial judge:
"* * * The court considers that the opinions of the landowner's appraisers to the effect that 11 acres of the landowner's property are affected by severance damages is correct. According to the estimate of the landowner's appraisers by their testimony and as shown on Exhibit D-1, they have indicated a severance damage of 40 per cent on 11 acres averaging out at $1,000.00 per acre or a total of $3,500.00 severance damage to this remainder. This calculation on severance damages is considered by the court to be practical, realistic and fair, and the Court will accept same as controlling in this case and assess severance damages based on this formula, in the amount of $3,500.00 with judgment to be rendered accordingly. * * *."
From a reading of that portion of the opinion quoted hereinabove, it appears to this Court that the trial judge was estimating the amount of severance damages as testified to by the experts, and that he did not make an error in calculation. If we should be in error, that this was an error in calculation, this judgment would have to be amended to the sum of $4,400.00 rather than $4,040.00, if we interpret the trial judge as using a strict formula for making the award.
The rule is well established that a judgment cannot be changed in favor of an appellee who has not appealed from the judgment nor filed an answer to an appeal taken; merely requesting such a change in brief or argument, or both, is not sufficient. LSA-C.C.P. Art. 2133; Polizzi v. Lotz, 240 *373 La. 734, 125 So.2d 146; Rader v. Rader, (La.App., 4 Cir., 1961), 126 So.2d 189; Pinchera v. Employers Casualty Co., (La. App., 2 Cir., 1954), 73 So.2d 623.
In reviewing a decision of a lower court, at the insistence of one party, a Court of Appeal may not amend the judgment to appellant's prejudice and to the favor of a party who has sought no remedy by answering the appeal. Polizzi v. Lotz, supra.
For the reasons assigned the judgment of the district court is reinstated, and as such, is affirmed at appellant's costs.
Affirmed.
LEAR, J., dissents, being of the opinion that the original opinion of this Court is correct.

On Rehearing
LEAR, Judge (dissenting).
As shown in the original opinion, the trial judge found that 10.1 acres over and above the property actually included within the servitude, suffered severance damages in the amount of 40% of the value. He also concluded that the property was worth $1,000.00 per acre. He then proceeded to award appellee the sum of $3,500.00, which, in our original opinion, we increased to $4,040.00 on the basis that the trial judge had miscalculated the amount of severance damages. In other words, 10.1 acres at $1,000.00 per acre would make a total value of $10,100.00; 40% thereof would be $4,040.00.
The Court granted a rehearing in order to determine whether or not this Court has the right to correct a miscalculation or clerical error in a judgment of the trial court where the appellee failed to answer the appeal. The majority of this Court has concluded that this Court does not have such authority, from which conclusion I respectfully dissent.
Under Code of Civil Procedure Article 2164, this Court is granted the power to render any judgment which is just, legal and proper upon the record on appeal. In my opinion, this article is broad enough to authorize our correcting errors in calculation made by the trial court. Such are not matters requiring the party prejudiced thereby to appeal or to answer an appeal specifically requesting the correction.
Code of Civil Procedure Article 1951, authorizes the trial court to correct its own errors of calculation "at any time, with or without notice" and "on its own motion." This article was derived from Code of Civil Procedure Article 547, and that latter article had been invoked by appellate courts as authority for their correcting clerical errors of the trial court. The comments under Code of Civil Procedure Article 1951 clearly express the redactors' intent to retain the jurisprudence arising under C.P. Article 547. In comment (d) under Article 1951 the reporter stated:
"Likewise, the appellate court has the power to correct errors in calculation in judgments of the district court, which could have been corrected if brought to the notice of the court below."
I, therefore, feel that the clerical correction made by this Court in our original opinion was proper and within our power; thus the application for rehearing should have been denied. At the very least, I feel that this Court should remand the case for the purpose of having the district court correct the error and amend the judgment.
For the above reasons, I respectfully dissent.
PER CURIAM.
In our original opinion in the instant case, we reduced the value of the permanent right-of-way from $900.00 to $675.00 and increased the severance damages from $3,500.00 to $4,040.00. On rehearing, we reduced the amount of severance damages from the sum of $4,040.00 to $3,500.00. Inadvertently, *374 we reinstated the judgment of the district court. It was not our intention in our opinion on rehearing to change the award which we made on the original hearing for the right-of-way, namely, the sum of $675.00.
Accordingly, we hereby correct our opinion on rehearing by decreeing that the award made for the permanent right-of-way is reduced from $900.00 to the sum of $675.00. The award made by the trial court for severance damages in the amount of $3,500.00 is affirmed, and the judgment appealed from is affirmed in all other respects. The costs of this appeal are assessed to plaintiff-appellant.
With this clarification of our opinion on rehearing, the application of plaintiff for rehearing is hereby denied.