AYRES, Judge.
This is an expropriation proceeding wherein plaintiff expropriated a right of way 50 feet wide and 7,254 feet long across defendants’ property for the purpose of constructing thereon a pipeline for the transmission of natural gas. In addition to this permanent right of way, there was also expropriated a temporary construction easement with an overall width of 200 feet, or an additional 75 feet on each side of the permanent right of way, extending easterly from the water’s edge of Lake Bistineau a distance of 435 feet. The quantity of land taken for the permanent right of way comprised 8.327 acres and, for the temporary easement, 1.498 acres.
Upon an initial hearing before the trial court, the court found the value of the land taken to be $1,000 per acre and awarded defendants judgment for this amount plus $500 for the temporary construction easement and $2,277 for other severance damages aggregating in all $11,610. On a rehearing granted by the *589 trial judge’s successor, severance damages were increased so as to increase the total award to $14,746. From this judgment plaintiff appealed.
The only issue before this court, the same as was before the trial court, is a question relating to the compensation and quantum of damages to which defendants are entitled because of the taking and the damaging of their property.
The land taken is a portion of a tract consisting of 399.27 acres located on a peninsula about a mile-and-a-quarter long with a width varying from about three-eighths to one-half mile. This peninsula, known as Adams Point, projects westerly into Lake Bistineau and has a shoreline of approximately three-and-one-half miles.
About a quarter of a century ago United Gas Pipe Line Company obtained a right of way SO feet wide across this property lengthwise of the peninsula and near its crest upon which it constructed two gas pipelines. The present right of way parallels the former and overlaps it by approximately 25 feet.
The issue with respect to the value of the lands or rights taken must be resolved on a basis of the highest and best use to which the property by its nature and location is suited or adapted. The use to which the tract of land has been put has generally been that of the growing of timber. That this was the highest and best use to which the property may be put was the opinion expressed by Frank W. Grigs-by and Walter L. Hunter, realtors, called as witnesses by plaintiff. However, they apparently agreed, because of the property’s location as a peninsula, high and well drained, surrounded on three sides by and adjacent to deep water, the lands taken and the property adjacent thereto would, in that respect, be suited for subdivision development. But they seemingly reasoned, because the property was located on the far side of the lake from the populated areas of Shreveport and Bossier City, and because of the creation of other lakes nearby, such as Toledo Bend and Cypress Bayou, the latter in Bossier Parish, there were no demands for such development of defendants’ property.
It appears appropriate to point out here that neither Grigsby nor Hunter had been instrumental in or connected with the development as subdivisions of any properties east of and bordering Lake Bistineau, nor had they directly or indirectly acquired or sold, for themselves or for others, properties in that locality.
Defendants’ witnesses, particularly A. A. Pierce, a real estate broker, and S. W. Culpepper, one familiar with and experienced in land and timber matters in the area and vicinity of defendants’ property, were of the opinion the highest and best use of the property was for subdivision development, that is, for residential purposes, camps, lodges, and more particularly for purposes pertaining to .recreational projects. The topography and location of the property, as above noted, would, in their opinion, make the property particularly adaptable for subdivision development.
The gist of the testimony of Pierce and Culpepper, especially that of Pierce, is to the effect that subdividing the property for development along the lines and for the purposes noted above would be most timely and feasible. Pierce’s testimony in that respect was most emphatic and grounded not only upon his opinion as an expert but upon his experience in developing three or more lakeside subdivisions in the vicinity of within a few miles of Adams Point.
For example, Pierce developed Flamingo Valley Lake Front Estates. Purchased for the purpose was a tract of 22% acres near the lake about a mile south of the property with which we are now concerned. The purchase price of the property was $24,000. A channel 30 feet wide, on which the subdivision fronted, was constructed as were canals from the channel to the deeper waters of the lake. The cost of development, including the purchase price of the land, aggregated $38,660. Lots sold grossed *590 $61,990, resulting in a profit of $23,330. Lots unsold were valued at $23,230. Other subdivisions developed by Pierce included Mill Creek and Cherokee Hills.
According to Pierce’s testimony, defendants’ property, the characteristics of which have already been noted, was much more valuable, suitable, and desirable for subdivision development than any other property on the east side of the lake, not excluding the subdivisions which he had developed. Pierce’s opinion was that the property with which we are now concerned could be readily and profitably developed at the present time. Culpepper’s testimony was in accord with that of Pierce. Defendant R. 0. Roy testified that due to income tax and other similar matters he had hesitated to develop the property.
Plaintiff, nevertheless, attacked the qualifications of defendants’ witnesses as experts and the weight of their testimony on a basis that these witnesses were not well versed or schooled in the technical approaches sometimes used in making appraisals ; in fact, neither had attended seminars, usually two in number, and of two weeks’ duration, where the technique of appraisals is taught. The objections are without merit. Their unfamiliarity with the terms usually applied to the several approaches in making an appraisal did not detract from their ability, through extensive and practical experience, to make appraisals.
Pierce, a high school graduate, attended college for two years where he studied engineering and forestry. He had extensive experience in not only surveying, estimating timber, and appraising lands but in buying and selling lands. From 1933 to 1938 he was with the United States Forestry Service surveying and appraising lands in several states. For a number of yeats he was employed by lumber mills and timber interests in buying lands and timber. In 1959, he went into business for himself. On his own and in conjunction with others, he developed several subdivisions, particularly those above noted. In developing these properties, he backed his judgments and appraisals with his own funds.
Culpepper also had some experience in the development of property on the east side of Lake Bistineau. This experience, however, was not extensive, but he had acted as a broker for 25 years and, in the meantime, had engaged in the buying, cutting, and selling of pulpwood over a wide area of Bienville Parish and in the vicinity of defendants’ property.
Nor do we find any merit in plaintiff’s objection to these witnesses on a basis that Pierce worked for defendant Roy for a short time in 1959 or because Culpep-per occasionally ran a landline or looked after a timber trespass for Roy. These witnesses’ interest in the outcome of this litigation, if any at all, would only be infinitesimal as compared to one of plaintiff’s witnesses who was, for many years and still is, employed by plaintiff.
The trial court largely relied upon Pierce’s testimony. We find no error in his doing so.
With respect to the testimony concerning the appraisals made by Pierce and Culpep-per, it appears appropriate to point out that, in an expropriation proceeding by the City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445 (1951), the Supreme Court, in emphasizing the importance of the testimony of witnesses engaged in subdividing and developing properties, said:
“The refusal of the judge to hear the testimony submitted by defendant on the question of the value of the land to persons engaged in the business of subdividing properties and erecting house projects was prejudicial to the defendant as the assessment of the judge was reached without consideration of this evidence which might have been of material assistance to him in arriving at the true worth of the property.”
52 So.2d 445, 448.
*591 We conclude the testimony of defendants’ witnesses was properly received and considered by the court. Plaintiff’s objections concerned the weight of the testimony rather than its admissibility.
We are of the opinion, as was the trial judge, that the highest and best use of the property taken and damaged in this instance was for subdivision development. In the second of the cases of the City of Shreveport v. Abe Meyer Corp., 223 La. 1079, 67 So.2d 732 (1953), the court found that an undeveloped tract of raw land, 165 acres of which was open land and 130 acres, wooded land, was potential subdivision property and fixed its value in an expropriation proceeding in accordance with that classification.
Pierce was of the opinion that the value of the property, in the absence of pipelines, would have been $1,800 per acre. Culpep-per expressed an opinion of a still higher value. Pierce, however, discounted the value of the property by virtue of the existence of prior pipelines to a sum of $1,-260 per acre. The court, probably influenced by the price Pierce paid for the Flamingo subdivision, $1,066.67 per acre in its original undeveloped state, fixed the value of the land taken here at $1,000 per acre and the value of the servitude granted for construction purposes at $500. Severance damages otherwise were fixed at $2,277.
The appraisals of plaintiff’s witnesses were based on prior sales of so-called comparable properties. Every tract referred to, except one, was without lake frontage or water advantages. These tracts were located at distances from the lake varying from three-eighths of a mile to approximately three miles. In point of time, only a few of the sales were made near the time this expropriation was begun. The one exception, which was noted with respect to water frontage, involved a transaction in 1957 whereby the title to a tract of 53.37 acres was placed in its rightful owner. No real sale was there involved although the consideration was recited to be $7,000. Even as to this exception, there was a strip of land located between it and the lake, the title to which, as disclosed by the plats, was in the State of Louisiana.
Nevertheless, Hunter’s appraisal of the property at $350 per acre and Grigsby’s at $400 per acre were discounted by them by 50 percent due to the taking of only a right of way or servitude. Hunter evaluated the temporary easement at 10 percent of his estimation of the value of the property taken; Grigsby fixed the value at 20 percent. These determinations were rejected by the trial court as unrealistic.
We find no basis for minimizing the damages in reducing the award for the property taken because only a servitude or right of way was expropriated. Whether the highest and best use of the property be that for subdivision purposes or for the growing of timber, of all these uses the owners have been deprived. No structures may be erected on the right of way nor may timber be grown thereon. From prior operations, the land’s value for oil and mineral development could constitute only a bare hope and a very remote possibility, if indeed any at all.
As pointed out in Central Louisiana Electric Company v. Fontenot, 159 So.2d 738, 741 (La.App., 3d Cir. 1964), an exception exists to the rule:
“ * * * that where only a servitude or easement is expropriated, and the landowner will continue to have some use of the property included within the right of way, the servitude taken should be valued at a percentage of the fee value of the land and not at its full value,”
to the effect that:
“ * * * where the expropriation of a servitude completely destroys the suitability of the land for the purposes for which it is best suited, it is proper to award the landowner the full fee value even though merely a servitude is expropriated.”
*592 Cited in support of the general rule are the following cases:
Texas Pipe Line Co. v. Johnson,
223 La. 380, 65 So.2d 884, 38 A.L.R.2d 785 (1953);
Colonial Pipeline Company v. Babineaux,
154 So.2d 594 (La.App., 3d Cir. 1963);
Louisiana Power and Light Company v. de Bouchel,
143 So.2d 270 (La.App., 4th Cir. 1962; Gulf States Utilities Co. v. Callahan,
65 So.2d 608 (La.App., 1st Cir. 1953).
Cited in support of the exception are these authorities:
Louisiana Power & Light Company v. Simmons,
229 La. 165, 85 So.2d 251 (1956);
Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc.,
203 La. 787, 14 So.2d 636 (1943).
The trial judge who saw and observed the witnesses as they testified, possibly knowing most of them personally and the property as well, placed a value on the property taken under a permanent servitude, as well as for a construction easement, and evaluated the severance damages. We approve his determination of the total award. This, in our opinion, is more in keeping with the proof than the determination of the judge succeeding to the office after trial of the case and who did not have the benefits and advantages had by the trial judge with respect to the witnesses or a transcript of the record.
Martin Timber Company, Inc., intervened claiming a preference in any award made in defendants’ favor by reason of its alleged ownership of timber on the expropriated property to the extent of $407.99. The record does not disclose that this intervention was allowed, served, or placed at issue. No further mention or discussion of it is necessary.
For the reasons herein assigned, the judgment appealed is amended by reducing the principal of defendants’ award to $11,610 and, as thus amended, it is affirmed.
The cost of the appeal is assessed to defendants-appellees; all other costs are assessed against plaintiff-appellant.
Amended and affirmed.