299 So.2d 411 (1974)
SOUTHWEST LOUISIANA ELECTRIC MEMBERSHIP CORPORATION, Plaintiff-Appellee,
v.
Charles L. BECK, Defendant-Appellant.
No. 4604.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1974.
Rehearing Denied September 4, 1974.
Writ Refused October 24, 1974.
*412 Bean & Rush, by Warren D. Rush, Lafayette, for defendant-appellant.
Davidson, Meaux, Onebane & Donohoe by Edward C. Abell, Jr., Lafayette, for plaintiff-appellee.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
FRUGE, Judge.
Plaintiff instituted this expropriation suit for a right of way for construction and maintenance of an electricity transmission line through defendant's property. There is no dispute concerning plaintiff's right to expropriate the right of way in question. The litigation concerns the value of the property to be expropriated and alleged diminution in value of the remaining and adjacent lands of the defendant. The trial court rendered judgment in favor of defendant and against plaintiff in the sum of $3,000 for property actually taken, and $1,656 as severance damages due a certain portion of the property isolated by the taking. From this judgment, the defendant landowner has appealed; the only issue raised being one of the inadequacy of the severance damage award. We amend and affirm.
Defendant's property involved herein encompasses an area of some 14.74 acres. This acreage is "L" shaped in configuration, having some frontage on a public road to the north; the acreage without road frontage is situated to the south of a tract owned by Harold Frederick, the adjoining neighbor to the west. The projected right of way initially cuts across the extreme northwest front corner of defendant's property and proceeds several hundred feet southward, thereby slicing off a triangular area some 23 feet wide and 366 feet in depth, at which point the triangular area terminates. The servitude then continues southward at a 100-foot width, passing through plaintiff's remaining property, thereby isolating a rectangular section in the extreme southwestern portion of defendant's tract (this isolated section comprising part of the area, hereinabove referred to as situated south of Harold Frederick's property). Included in the servitude, by this taking, was .946 acres of defendant's property and .676 acres was contained in the isolated southwest section.
The projected servitude is intended to accommodate an H-frame transmission structure constructed from 55-to-60-foot poles with 32-foot crossarms and braces. As presently intended, only one such structure, consisting of two poles, will be located on the defendant's property. (However, at any future time, under the provisions of the expropriation agreement, *413 plaintiff is empowered to add additional structures where necessary.) The transmission capacity of the line will be 138,000 volts, but will temporarily operate at 69,000 volts.
The expert testimony in this matter revealed that the highest and best use of the subject property was for rural residential development purposes. Defendant's property provides an attractive homesite, complete with a brick veneer home, barn, riding yard, and numerous trees. As previously noted, a total of .946 acres will be taken for the servitude, and the trial court deemed an award of $3,000 for this property taken to be just under the facts. This amount is not contested on appeal. As to the isloated southwest section, severance damages in the amount of $1,656 were awarded. This amount, likewise, is not at issue.
No severance damages were found regarding defendant's property situated east of the servitude, an area of 9.676 acres including defendant's residence and other improvements. The trial court found the testimony regarding this property conflicting, and any such damages to be only speculative and remote in nature.
Defendant contends he has suffered a 30% loss in value, for 200 feet on each side of the right of way, because of the existence of the electrical transmission lines. He also contends there is a 5% severance damage to the remainder of the property east of the servitude, including the home and other improvements.
The paramount question presented for our determination is whether the existence of an electrical transmission line some 400-plus feet from defendant's home requires severance damages to be awarded. We note that mere detraction from the aesthetic appearance of property, without acceptable proof of a resulting reduction in market value, does not provide a valid predicate for the assessment of severance damages. The determination of severance damages must be made on the basis of the difference between the fair-market value of the remainder of the property before the taking and the fair-market value thereof, subsequent to the taking. Where aesthetic considerations serve to reduce the market value of the remainder, they may certainly be considered in determining the amount of the severance damages to be awarded. Central Louisiana Electric Company, Inc. v. Davis, 291 So.2d 489 (La. App. 3rd Cir. 1974); Central Louisiana Electric Company v. Mire, 140 So.2d 467 (La.App. 1st Cir. 1962).
Defendant landowner contends the existence of this transmission line has undermined the beauty and serenity of his tract; that the desirability and utility of his acreage has been severely diminished and that, accordingly, severance damages should be awarded. While we are not at liberty to pronounce for all time that the mere existence of a transmission line across any sector of one's property, in all conceivable circumstances, results in the necessity of a severance damage award, we do find such an award to be required under the facts of this case.
The plaintiff's appraisers testified that there would be no depreciation in value of the defendant's property to the east of the servitude, and that the property would retain its former highest and best use. Although we find this testimony to have been given with the best of intentions, we are unable to accept it as controlling in this case. We conclude that the trial court's reliance upon this evidence was error, based on the following facts.
This court has recently held that unsightliness, in conjunction with other proven factors, can support an award for severance damages. Central Louisiana Electric Company, Inc. v. Davis, supra. In the instant case, other factors were considered in addition to unsightliness; the primary factor being public market resistance *414 to the purchase of property adjoining servitudes supporting utilities characterized by danger, whether real or presumed. In the case of Texas Pipe Line Co. v. National Gasoline Co., 203 La. 787, 14 So.2d 636, 638 (1943), the following was said:
"The argument for the plaintiff that there is no real danger or reason for such fear has no force against the fact that the fear exists and is unavoidable. The fear of danger in some cases is as bad as the danger itselfit is a condition not a theory."
We find the comparables and photographs presented on behalf of plaintiff to be probative but inadequate under the circumstances at hand. We take note that the market values demonstrated by these figures belie their true meaning and effect. The fact that certain persons, due to insufficient finances or poor economic status, must purchase adjacent to certain servitudes does not offset or overcome the fact that the property adjoining and affected by transmission lines is usually rendered less valuable. In reality, persons choose to live near such servitudes only because they are unable to afford better and more expensive homesites. We, therefore, cannot accept, as controlling, the comparables presented by plaintiff's witnesses. Gulf States Utilities Company v. Domingue, 72 So.2d 623 (La.App. 1st Cir. 1954). We believe them only pertinent to establish that persons will live near servitudes, if the price is less expensive than elsewhere, (and as demonstrated by these exhibits, those purchasing property adjoining such servitudes are usually given gratis the area within the servitude as an incentive to buy in this location).
Mr. Preston J. Babineaux testified for the defendant and was of the opinion, based on comparables relative to pipeline servitudes, his experience, and the market data approach, that the property to the east of the servitude site would suffer a 30% diminution in value in regard to the 200-foot width along the eastern boundary of the servitude. (This 200-foot swath entailed 3.34 acres.) He also believed that 5% severance damages would be suffered by the remainder of the tract, the 9.676 acres hereinabove referred to.
Mr. Babineaux valued the acreage in question at $3,000 per acre, and determined that the 3.34 acres at a 30% reduction in market value, due to the proximity to the transmission line, suffered $3.612 in severance damages. We find the case of Louisiana Power & Light Company v. Ristroph, 200 So.2d 14, 24 (La.App. 1st Cir. 1967), to be apposite to the instant case. Ristroph, supra, found severance damages properly allowable with respect to 200-foot strips on each side of a right of way taken for electric transmission purposes. This award was predicated upon the ". . . . psychological effect on any purchaser or user of property this close to the transmission line." This view is precisely in point with our own on this issue.
Under the present facts and the law previously set out, we are constrained to find severance damages only in regard to the 200-foot swath of some 3.34 acres situated to the east of the right of way. As to the existence of severance damages in respect to property further removed from the servitude, we feel that any such damages would be most speculative and, therefore, not recoverable.
Defendant has also appealed the trial court's failure to set expert witness fees in behalf of Joe Anzalone, a real estate developer accepted by the court as having expertise in the field of real estate with experience in appraisal. It was the position of the trial court that Mr. Anzalone's opinions, as to property valuations, were not based on any theory acceptable in this type of case. We disagree and, accordingly, award expert witness fees in the sum of $750.
For the above and foregoing reasons, the judgment of the trial court is amended to allow the recovery of $3,612 for severance *415 damages due the remainder of defendant's tract. Expert appraisal fees in the amount of $750 are hereby awarded to Joe Anzalone. As amended, the judgment of the trial court is affirmed. Appellee is to pay all costs of this appeal.
Amended and affirmed.