MILLER, Judge.
Plaintiff Southwest Louisiana Electric Membership Corporation (SLEMCO) ap *368 peals the judgment condemning it to pay defendant Orlando Lemon, as administrator of the estate of his minor daughter Marshia Lemon, severance damages of $17,760 resulting from its expropriation of a 100 foot by 1300 foot servitude for installation and operation of electric power lines. Lemon answered the appeal seeking an increase in the award. We affirm.
The parties stipulated to a $15,840 valuation of the 2.96 acre servitude taken through the middle of landowner’s 21 acre tract. The $17,760 award of severance damages was additional compensation. The tract is located some three miles from the city of Lafayette and has a highest and best use for suburban homesites; that part fronting Highway 339 is ready for rural homesites and the balance is potential residential subdivision property. The entire 21 acre tract is almost rectangular measuring approximately 700 feet north and south by 1300 feet east and west; the east side fronts Louisiana Highway 339. The 100 foot wide servitude extends due east and west near the center of the tract, leaving landowner with a 325' x 1300' tract to the north of the servitude and a 275' x 1300' tract to the south.
SLEMCO expropriated the servitude to transmit electric energy and power, which specifically includes the right to enter upon and erect, construct, extend, maintain, inspect, operate, replace, remove, repair, patrol and relocate within the right of way, transmission lines and other lines included but not limited to H-frame poles and all appurtenances of wood, metal or other type structures, with the right to replace one structure with another type at any time with conductors, wires, cross-arms, guy wires, conduits, stubs and the other usual fixtures for the transmission of electricity, together with all the foundations, anchors and braces to support the same, together with all rights of ingress and egress for the full and complete use and occupation and enjoyment of the servitude, including the right from time to time to cut and remove all trees, underbrush and other obstructions situated upon the right of way without the payment of damages, and the further right to cut and remove from adjacent land outside the right of way any and all trees, which, while falling may come within ten feet of the electric lines, upon payment of reasonable market value of such trees, after prior notice to landowner.
SLEMCO’s initial plans are to construct a 138,000 volt transmission line, which can be converted to carry 230,000 volts, along the center of the servitude mounted on H-frame poles 60 to 65' tall. The H-frame poles will be placed 15.5 feet apart. Along each side of the servitude, SLEMCO plans to build a service line mounted on 35' tall single poles with suitable cross-arms and wires.
The parties agree that landowner’s remaining property was worth $5,000 per acre prior to the taking. SLEMCO contends the trial court erred in awarding severance damages amounting to a 30% loss in value to a 200' strip of land on each side of the servitude and adjacent thereto. On the other hand landowner contends it has suffered a 30% loss in value to the entire remaining tracts and severance damages should be increased to $28,750.
Preston Babineaux and Jesse Guidry were landowner’s two expert appraisers; both have developed subdivisions. in the general area and both routinely buy and sell properties. Both referred to compara-bles to support their contention that properties adjacent to electric transmission lines are worth less than properties situated in other areas. There was little price differential in some cases and in others there was about a 15% differential rather than 30%. On cross examination, both admitted extreme difficulty in finding precise compara-bles; the ones relied upon were in a subdivision developed long after the electric transmission line was installed. Nevertheless, both were convincing in citing personal experiences establishing buyer resistance to purchasing homesites adjacent to servi-tudes; this they translated to a 30% reduction in the value of the entire remainder of landowner’s tract. They also supported their opinion that severance damages were *369 sustained by this landowner because of difficulties in subdividing the remainder of this tract; particularly important was the problem of where to locate roads to the back part of the two tracts. What was an easily subdivided desirable suburban home-site tract has become two tracts which, because of the servitude, present difficult problems.
Gene Cope and Dan A. Ritchey were SLEMCO’s two expert appraisers; Cope is highly qualified as an appraiser but has no experience buying and selling properties in the area. Although Cope admits his personal preference to homesite properties remote from electric transmission lines, over the years he has developed evidence to show that the market makes no price distinction between tracts adjacent to or remote from electric transmission lines.
He presented an exhibit of numerous 8 x 10" color photographs showing transmission lines along major highways coming into Lafayette and points to buildings and businesses operating under and around these lines. Although he didn’t know the sale prices for these properties he projected the theory that the transmission lines did not affect their value. Most of those lines were single pole lines and the servitude agreement did not prohibit landowner from using his property under the transmission lines. Cope admitted at Tr. 278 that he has never been involved in developing, purchasing or selling property on which there were transmission lines.
Cope was most impressive in attacking the comparables used by Babineaux and Guidry; he opined that the difference in price paid for the lots was not related to the adjacent transmission line, but instead to the -fact that the higher priced lots were sold some two years later than the lots adjacent to the transmission lines; that the subdivision was then more attractive because it was better developed. Cope admitted that SLEMCO’s servitude made it more difficult to subdivide the subject tract, but contended the problem was not insurmountable.
As distinguished from Cope’s testimony based entirely on a study of the properties and the records, Ritchey based his “no severance damage” conclusion on his “opinion as to what the remainder of the property would sell for after the taking.” Tr. 306. Ritchey admits that homesite property is easier to sell if it is not adjacent to electric transmission lines (Tr. 311). His opinion simply differed with the opinions expressed by Babineaux and Guidry; he concludes that this difficulty in selling homesites does not establish the property is worth less.
Landowner’s experts were of the opinion that the buyer resistance which makes it harder to sell suburban homesites adjacent to highvoltage transmission lines reduces the market a developer can attract, and this reduction translates to severance damages.
The trial judge’s factual determination is entitled to great weight and will not be disturbed absent manifest error. See, Dakin & Klein, Eminent Domain in Louisiana, “Burden of Proof and evidence,” § 6. We fail to find manifest error in the trial court’s finding that severance damages resulted. Although SLEMCO’s experts insisted upon a contrary view, there is an adequate basis for the trial judge’s conclusion. Central Louisiana Electric Company, Inc. v. Davis, 291 So.2d 489 (La.App. 3 Cir. 1974).
We reject SLEMCO’s assignment of error that there is no factual basis for the conclusion that severance damages were sustained by landowner’s remaining property. SLEMCO argues that our past decisions are being interpreted as holding that severance damage occurs as a result of a taking of an electric transmission line servitude as a matter of law and is not a factual proposition. In our view, the issue of severance damages is a factual one.
The burden of proving severance damages rests with landowner and he must establish such damages with legal certainty by a preponderance of the evidence. State, Department of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975). Just as the court was there convinced that landowner proved severance *370 damages, we too find the trial court’s decision supported by the evidence. Every single expert agreed the servitude made the adjacent property less desirable for its highest and best use, suburban homesites; SLEMCO’s witnesses were of the opinion this did not create a reduction in value and landowner’s witnesses held to the contrary view. The trial court was evidently impressed with the practical experience of landowner’s experts in developing subdivisions and in buying and selling properties in the area. The trial court was likewise impressed with the difficulties confronting a prospective subdivision developer because of the servitude through the middle of the tract, leaving two tracts to be developed.
The trial court’s decision is supported by the jurisprudence. Southwest Louisiana Electric Membership Corporation v. Beck, 299 So.2d 411 (La.App. 3 Cir. 1974); Central Louisiana Electric Company, Inc. v. Davis, 291 So.2d 489 (La.App. 3 Cir. 1974); CLECO v. Mire, 140 So.2d 467 (La.App. 1 Cir. 1962).
Landowner’s answer to the appeal is rejected for the same reasons assigned for rejecting SLEMCO’s argument. Because of the configuration of landowner’s tract, all of landowner's' property is adversely affected by the servitude. Nevertheless, as we view it, the award is adequate to cover all severance damages sustained by landowner.
The trial court award is just and reasonable under the facts and circumstances and is supported by the record.
The trial court judgment is affirmed at SLEMCO’s costs.
AFFIRMED.