353 So.2d 371 (1977)
LOUISIANA POWER & LIGHT COMPANY
v.
Vernon L. CALDWELL, Jr., et al.
No. 11626.
Court of Appeal of Louisiana, First Circuit.
November 28, 1977.
Rehearing Denied December 28, 1977.
Writ Granted February 9, 1978.
*373 Eugene G. Taggart, New Orleans, Kenneth Watkins, Houma, for plaintiff and appellee.
John V. Parker, Baton Rouge, for defendants and appellants.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
COVINGTON, Judge.
Plaintiff, Louisiana Power & Light Company, seeks by expropriation a right-of-way of 100 feet in width in the nature of a servitude across the property, known as "Magnolia Plantation," of defendants, Mr. and Mrs. Vernon L. Caldwell, Jr., and their two children, John and Albert Caldwell, for the purpose of constructing, operating and maintaining a 230 KV electric transmission line.[1]
Defendants' property comprises a large tract of land, containing about 2,000 acres, which is bisected by State Highway 311 (the old Thibodaux-Houma Road), and which is, for the most part, used for agricultural (sugar cane) purposes. The proposed servitude contains 29.07 acres[2] and runs in an easterly-westerly direction across defendants' property, having a width of 100 feet and extending across defendants' property. The record reflects that the proposed servitude consists of 2.56 acres of wooded swamp; 16.44 acres of sugar cane field west of the state highway right-of-way; 1.11 acres of cultivated lands within existing rights-of-way; and 8.96 acres of sugar cane field and wooded area east of the state highway right-of-way.
The defendants filed exceptions, including want of citation, together with their answer, generally denying that the expropriation was for a public and necessary purpose, and demanding compensation to the full extent of their loss.
The trial judge overruled all exceptions, found that the expropriation of the right-of-way was for a public and necessary purpose, and rendered judgment adjudicating the right-of-way to the plaintiff, and fixing the defendants' compensation at $50,743.50. The trial judge then denied defendants' motion for new trial and claim for attorney's fees. The defendants have appealed this judgment. We affirm.
The procedural question raised by the defendants-appellants, a declinatory exception for failure to issue and serve citation upon the defendants, is without merit. The record shows that each of the defendants was served with certified copies of the petition of expropriation, the order fixing the trial date, and the notice of trial issued by the clerk of court. The notice specifically summons the defendants to file their answer and to serve a copy of same on the plaintiff within 15 days after service of the notice. This procedure was in full compliance with the expropriation statute. LSA-R.S. 19:5. Appellants argue that LSA-C. C.P. art. 1201 requires "citation", under penalty of nullity. We point out that appellants overlook the "Preliminary Statement" to the "Citation" Chapter of the Code of Civil Procedure. There, it is plainly stated that "special provisions of law providing for a particular mode of citation and service are not affected." The notice of trial required by LSA-R.S. 19:5 is equivalent to citation, which, after all, is only a form of process summoning the defendant to take appropriate steps to defend himself. See Tenneco Inc. v. Earhart, 220 So.2d 109 (La.App. 3 Cir. 1969).
*374 In addition to the assigned procedural error, the defendants assign as error the following: (1) the finding by the trial court that the proposed servitude was for a public and necessary purpose; (2) the awarding by the trial court of inadequate compensation; (3) the failure of the trial court to award proper severance damages; (4) the failure of the trial court to apportion properly the compensation; and (5) the refusal of the trial court to award the defendants attorney's fees.
On the question of "public and necessary purpose," the appellants complain that the trial court committed error in placing the burden of proof on the defendants, rather than the plaintiff, to show public necessity for the taking of the right-of-way. The record does not support appellants' contention that the plaintiff was discharged from its burden of proving public necessity and public purpose. On the contrary, the record amply supports the conclusion that this taking was for a public and necessary purpose. The unrefuted testimony of Jerry Saacks, systems planning manager of Louisiana Power & Light Company, is that the particular transmission line will connect the plaintiff's existing Thibodaux and Terrebonne electric substations and complete the loop from the Waterford-Little Gypsy generation complex as part of the network, whereby electric energy is delivered to customers; that the existing power lines will no longer provide reliable and adequate service to the area, and the new transmission line is needed to provide an additional and alternate supply of electricity from the generating complex. Mr. Saacks further testified that the new transmission line will serve a new electric substation that is planned for the foreseeable future. The new substation is to be located between the present Thibodaux and Terrebonne electric substations. F. M. Bauer, Jr., the transmission engineering supervisor in charge of designing, locating and constructing transmission lines and electric substations for the plaintiff, testified that he selected the proposed route with both the needs of the electric company and convenience of the landowners in mind, and that he followed natural boundaries and property lines as near as possible. Mr. Bauer further testified that he had considered the defendants' request for a relocation of the line along and adjacent to the north-south and east-west pipeline, but that such relocation was unfeasible, since it would add a considerable distance to the length of the transmission line, increase the costs of construction and maintenance, and would take the transmission line beyond the area where the new substation was to be located. The defendants offered no evidence on the public purpose-necessity issue. In particular, the record contains nothing of any evidentiary value that the proposed servitude will in any way do violence to the State's policy of conservation of land and preservation of the aesthetic quality of the environment as expressed in the new Constitution and implemented by legislative enactments. See La.Const. of 1974, Art. 9, Sec. 1; LSA-R.S. 40:2351. We, therefore, see no merit in the defendants' contention that the plaintiff "acted arbitrarily, capriciously and in bad faith" in selecting the proposed servitude. We find that the proposed servitude will serve a definite public use and purpose as required by Article 1, Section 4 of the 1974 Louisiana Constitution.
We need answer the defendants' objection to the choice of the route of the transmission line only by citing the case of Texas Eastern Transmission Corporation v. Bowie Lumber Company, 176 So.2d 735, 739 (La. App. 1 Cir. 1965), writ denied, 248 La. 385, 178 So.2d 663 (1965), wherein the Court stated:
"It is the rule in this State, and which prevails in all other jurisdictions that we [have] examined, that in expropriation of property, including servitude, rights of passage, and right of ways of the type here under consideration, the selection of a route by the expropriating authority or agency will not be disturbed or upset except upon showing by the party resisting the expropriation that the selection was made through fraud, bad faith or conduct or practices amounting to abuse of the privilege.

*375 "There is the presumption present that the selection made by the expropriating authority is the best and most feasible."
The new Constitution effects no change in this jurisprudential rule concerning selection of the location of a proposed servitude. The record in the case at hand does not show that the plaintiff is guilty of conduct which would vitiate its selection of the route of the transmission line.
Regarding compensation to the landowners for the proposed servitude, the defendants complain that the trial court did not compensate them to "the full extent" of their loss, as dictated by Article 1, Section 4 of the 1974 Constitution.
What this constitutional provision says is that "just compensation" must be paid to the landowner for the property taken, and that the trier of the question of "compensation" must fix the award at an amount which will pay the landowner "the full extent of his loss," or leave him "in equivalent financial circumstances after the taking." Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L. Rev. 1, 16 (1974).
In view of the constitutional provision, we believe that in fixing the amount of compensation for expropriated property the test remains "market value, based on the most recent comparable conventional sales of similar property, and the highest and most profitable use to which the property may be put in the foreseeable future, excluding remote and speculative value." City of New Orleans v. O'Krepki, 162 So.2d 76 (La.App. 4 Cir. 1964), writ refused, 246 La. 345, 164 So.2d 350 (1964).
The plaintiff's experts were Peter J. Talluto and Max J. Derbes, Jr., expert realtors-appraisers. They valued the land on an acreage basis. The market value of the property was determined by using comparable sales of similar property. They considered the best and highest use as sugar cane cultivation. It appears that the trial judge primarily based his award on the opinion of Mr. Talluto.
Mr. Talluto valued the property taken at $48,355.50. His valuation related to an analysis of the subject property as consisting of four classifications: wooded swamp, cultivated land, unencumbered land, and encumbered land. For that portion from the westernmost end of the right-of-way to a point marking a distinction of wooded swamp and cultivated area, he placed a fee value of $1500 per acre, and the servitude at 50% of fee value or $750 per acre. For the land in sugar cane cultivation, between the wooded swamp and the westerly edge of the state highway right-of-way, he placed the fee value at $1550 per acre, with the servitude at 75% of fee value, or $1162 per acre. From the easterly edge of the state highway right-of-way to the east end of the servitude, a fee value of $4000 per acre, with the right-of-way at 75% of fee value or $3000 per acre, was given. He placed a right-of-way value of 10% of fee value of $4000 per acre, or $400 per acre on those areas of the right-of-way which were already encumbered. As shown, Mr. Talluto found that the Caldwell's would retain a certain percentage of the surface rights on that portion affected by the proposed servitude; therefore, he reached the percentages for the several classifications as set out above.
The fixing of such a percentage is a recognized way of arriving at the value of a servitude taken. In the case of Dixie Electric Membership Corporation v. Watts, 268 So.2d 128, 132 (La.App. 1 Cir. 1972), the Court observed:
"Where only a servitude or easement is expropriated and the landowner will continue to have some use of the property included within the right-of-way, the servitude taken shall be valued at a percentage of the fee value of the land and not at its full value. Central Louisiana Electric Company v. Fontenot, 159 So.2d 738 (La.App. 3rd Cir. 1964), and cases therein cited. Where the expropriation of the servitude completely destroys the suitability of the land for the purpose for which it is best suited, it is proper to award the landowner the full fee value *376 even though merely a servitude is expropriated. However, each case should be decided on its own merits and not by some reference to an automatic percentage. Further, any percentage of fee used by the appraiser should be justified by the appraiser by reference to limitation of use of the property occasioned by the taking, considering particularly the highest and best use of the land and the specific use that could be made of the land at its highest and best use."
Mr. Derbes, the other expert appraiser, followed substantially the same valuation methods used by Mr. Talluto, and arrived at a total value only slightly below that fixed by Mr. Talluto. Mr. Derbes set a total value of $47,252.50 as the value of the right of way.
The defendants used Logan Babin, Jr., a realtor-appraiser expert, to fix the valuation of the property taken. He also valued the land on an acreage basis and determined the market value of the land by using the comparable sales method. He considered the best and highest use of the property to be residential subdivision. He considered that the servitude taking would amount to 100% of the property, with the landowner retaining no beneficial use after the taking. He would give an award of $61,640.00 to Albert and John Caldwell for the tract located west of the state highway, and $42,880.00 to Mr. and Mrs. Caldwell as the total value of the part taken east of the state highway.
In the instant case, the trial judge fixed the award due the defendants at $50,743.50, with $48,355.50 as compensation for the servitude, $500.00 as compensation for guy-wire sites, and $1,888.00 as severance damages. In expropriation cases, much discretion is granted the trial judge in weighing the testimony of experts. His finding of value, based on such evidence, will not be disturbed unless manifestly erroneous.
The defendants contend that the trial court erred in not relying upon the opinion of Mr. Babin, because he was "actively engaged in daily contact with the real estate market in this area. Under these circumstances, the opinion of the expert who is more familiar with the day to day buying and selling in the local market is to be preferred."
In the case of State, Department of Highways v. Degueyterre, 326 So.2d 627, 629 (La.App. 3 Cir. 1976), writ denied, 330 So.2d 315 (La.1976), a similar argument was rejected, with the Court reasoning:
"We cannot accept this argument. It is certainly true that an appraiser's familiarity with the locality is a factor to be considered by the trial judge in weighing the testimony of an appraiser. State, Department of Highways v. McPherson, 261 La. 116, 259 So.2d 33 (1972). However, there are many other factors to be considered as well and the trial judge need not accept the opinion of the appraiser who is familiar with the locality if, on the whole, he finds the testimony of the other appraisers to be more credible. His decision will not be overturned unless it is manifestly erroneous."
The defendants strongly argue that the trial judge erred in not considering the property taken as having a residential subdivision purpose as its best and highest use. The evidence in the record of this case shows that the property has primarily been used for sugar cane cultivation. Nothing has been done to place this property in a residential subdivision classification. Thus, the defendants' contention has no merit.
In Central Louisiana Electric Company v. Harang, 131 So.2d 398, 401 (La.App. 1 Cir. 1961), this Court pointed out:
"It is common knowledge that any tract of land wheresoever situated may be physically divided into residential plots or lots and subdivided irrespective of the demand for such property. However, potential subdivision use, to serve as the basis for establishing market value in an expropriation proceeding, must be shown to be reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture. If such potential *377 future use is shown within the reasonably near future the owner is entitled to compensation on the basis of best and highest use for subdivision purposes even though the property affected be not in use for such purpose at the time of taking. However, if the potential (as, indeed, there is a potential in every case no matter how remote) is so indefinite or remote as to be predicated solely upon speculation and conjecture, it may not serve as the criteria of market value."
In the instant case, the record supports the conclusion that the subject property's use for residential subdivision purposes is "so indefinite or remote as to be predicated solely upon speculation and conjecture." The trial court properly refused to accept this use as the criteria of market value. We find no manifest error committed by the trial judge.
As a part of their complaint against the adequacy of the compensation awarded, the defendants protest the trial judge's failure to apportion the award between the parents and children. The defendants contend that the trial court erred in failing to recognize that there are now two separate tracts of land involved, and to award the children, Albert and John, the amount due for the right-of-way on the tract of land west of State Highway 311, and to award the parents the amount due for the other tract of land. We consider this of no moment, since the landowners appear to have consistently treated the Plantation as a single unit and to continue to deal with the Plantation as they did before the act of donation from parents to sons.
On the question of severance damages to the remainder of their property, the defendants complain of the inadequacy of the award for this item. The burden of proving severance damages rest with the landowner, who must establish such damages with legal certainty by preponderance of the evidence. Southwest Louisiana Electric Membership Corporation v. Lemon, 338 So.2d 367 (La.App. 3 Cir. 1976), writ refused, 340 So.2d 998 (La.1977). Such damages are not to be presumed, but must be established by the landowner, who must show by competent testimony that the land remaining has been diminished in value as a result of the taking. Southwestern Electric Power Company v. McCaskill, 307 So.2d 385 (La.App. 2 Cir. 1975).
The trial judge's factual determination is entitled to great weight and will not be disturbed in the absence of manifest error. Southwest Louisiana Electric Membership Corporation v. Lemon, supra.
There is another item of damages of which the defendants complain. It is their contention that the trial judge allowed compensation for only two guy-wire sites when four such sites were taken by the expropriation. The record, especially the value estimate of Mr. Talluto, shows that all of the guy-wire areas were included in the total acreage (29.07) upon which Mr. Talluto placed his valuation of $48,355.50. Since the trial judge's award seems to have been mainly based on the opinion of Mr. Talluto, as counsel for both parties agree in their briefs, no additional award should have been made for guy-wire sites. However, we are not inclined to disturb this award after reviewing the entire record in this case; particularly, since the plaintiff has neither appealed nor answered the landowners' appeal, no diminution in the award will be made.
In considering appellants' request for attorney's fees, this request was properly denied by the trial court. In order for landowners to recover attorney's fees, they must show that they are entitled to them contractually, by jurisprudence, by statute, or under the Constitution. LSA-R.S. 19:8A, relied upon by the landowners here, provides for attorney's fees under conditions not present in the instant case. That provision allows the trial court in its discretion to award reasonable attorney's fees, "if the highest amount offered is less than the compensation awarded." The trial judge, after hearing the case and again considering the case on a motion for a new trial, concluded that the defendants were not entitled to attorney's fees under the facts and *378 circumstances of the case in hand. We find no abuse of his discretion. Consequently, the denial of attorney's fees was proper.
We find the trial court's judgment correct in all respects; the trial court's award is just and reasonable and compensates the defendants to the full extent of their loss under the facts and circumstances of this case. We, therefore, affirm the judgment appealed at the defendants-appellants' costs.
AFFIRMED.
CHIASSON, J., dissents and assigns written reasons.
CHIASSON, Judge, dissenting.
I respectfully dissent.
The judgment of the trial court which has been affirmed by the majority herein grants unto plaintiff a gratuitous and unlimited right of free ingress and egress upon, over, under and across the entire properties of defendants, known as Magnolia Plantation. First, there has been no showing of any necessity of such an unlimited right of ingress and egress over defendants' property. The right-of-way adjudicated to plaintiff crosses the public highway and thereby affords plaintiff an access to its servitude without the necessity of encumbering the entire plantation with an unlimited right of passage. Second, if in fact such an unlimited right of passage or any right of passage is necessary, then the courts should have awarded an amount of money to compensate defendants for the right of passage over other lands outside of the expropriated right-of-way. The failure to do so results in the taking of defendants' property without the payment of any compensation in direct contravention of our constitution. That portion of the trial court's judgment should be reversed.
Further, the trial court in its reasons for judgment placed upon defendants the burden of proving that the plaintiff acted arbitrarily, capriciously or in bad faith in its selection of the location or route for the transmission line. This is contrary to our constitution and statute law cited hereinafter. I agree with the following statements of this court in the case of Louisiana Power & Light Company v. Leche, Wife of Vernon L. Caldwell, Jr., et al., La.App., 353 So.2d 1343, to-wit:
"This expropriation proceeding was instituted pursuant to LSA-R.S. 19:2(7) which provides:
`Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
* * * * * *
`(7) Any domestic or foreign corporation created for the purpose of generating, transmitting and distributing electricity and steam for power, lighting, heating, or other such uses. The generating plants, buildings, transmission lines, stations, and substations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire using companies or, more than is necessary, with the convenience of the landowners; * * *.'

`(Emphasis supplied).'
"We note that of the nine categories under LSA-R.S. 19:2 authorized to expropriate needed property, it is only in category number 7 wherein there is any mention of the convenience of the landowners. Certainly, there must be some significance to this distinction and difference.". . .
"Generally, the route selected must be based on sound engineering and economic principles, however, we conclude that under LSA-R.S. 19:2(7) the convenience of the landowner is an element that must be considered.
"In discussing LSA-R.S. 19:2(7), and in particular the convenience of the landowner, the Court in Southwest Louisiana Electric Mem. Corp. v. Simon, 207 So.2d 546, 553 (La.App. 3rd Cir. 1967), writ refused, 252 La. 104, 209 So.2d 37 (1968) for reasons that judgment was not final, said:

*379 `The necessity for expropriation for public purposes or in the public interest relegates the landowner's right to all of the aspects of his ownership to a secondary position. But we think it clear that the statute requires the court to consider the landowner's safety and convenience as the primary consideration and the selection of location by the condemnor to be the secondary consideration.'
"To disregard the added language of convenience of the landowners found in LSA-R.S. 19:2(7) and not found elsewhere in the expropriation authority granted by LSA-R.S. 19:2 would be to completely overlook the obvious intent of the Legislature that the convenience of the landowners be taken into consideration in determining whether the expropriating authority has abused that discretion granted it."
It is not enough for plaintiff's expert to simply conclude that the convenience of the landowner was taken into account in the selection and location of the route of the transmission line, but they are required by law to present facts upon which the court can make a determination of whether or not the convenience of the landowner was taken into account in locating the transmission lines. It is plaintiff's burden, not the defendants'.
The evidence shows that the purpose of this line is to tie-in the substations located in Houma and in Thibodaux. The following of existing servitudes as contended for by the defendants would result in a shorter and less expensive transmission line as between these two substations. It is only if the transmission line is extended to an, as yet, unplanned new substation that the transmission line may be longer. No bona fide investigation into the feasibility of the alternate route has been made by the plaintiff.
I would therefore remand this case to the trial court on the question of the location of the transmission line.
Finally, insofar as the majority opinion can be interpreted to mean that the Louisiana Constitution of 1974 has had no effect upon the rules to be applied in expropriation suits by private entities, I must respectfully disagree. Article I, Section 4, Article IX, Section 1 of the Louisiana Constitution of 1974, L.R.S. 40:2351 and L.R.S. 19:2(7) mandates that private corporations expropriating property select routes for their facilities which conserve land and protect esthetic qualities, in addition to the specific needs of the expropriating entity.
For the above and foregoing reasons, I would reverse, in part, and remand to the trial court.
NOTES
[1] The record reflects that the father and mother had donated to their sons an undivided interest in a portion of Magnolia Plantation, by instrument dated February 13, 1976; however, the Caldwell family had continued to deal with the property as one large plantation just as they did prior to the transfer.
[2] The acreage includes .05 acres for guying servitudes.