360 So.2d 848 (1978)
LOUISIANA POWER & LIGHT CO.
v.
Vernon L. CALDWELL, Jr., et al.
No. 61473.
Supreme Court of Louisiana.
June 19, 1978.
Rehearings Denied July 26, 1978.[*]
*849 John V. Parker, Sanders, Downing, Kean & Cazedessus, Baton Rouge, for defendants-applicants.
Kenneth Watkins, Watkins, Watkins & Walker, Houma, Andrew P. Carter, Eugene G. Taggart, George F. Riess, Monroe & Lemann, New Orleans, for plaintiff-respondent.
DENNIS, Justice.
Louisiana Power and Light Company (LP&L) sought to expropriate a right of way, in the nature of a servitude, of some one hundred feet in width across the property of defendants. The purpose of the servitude was the construction, operation, and maintenance of a 230KV electric transmission line. The total acreage contained in the right of way comprises some 29.07 acres, including .05 acres for guying servitudes; the proposed servitude runs east to west across the defendants' property and spans swamp land, wooded acreage, and areas under agricultural cultivation.
Defendants objected to the taking by LP&L, contending that the expropriation did not serve a public and necessary purpose and that the plaintiff had failed to follow statutory mandates requiring that the expropriating authority consider the convenience of the landowner in selecting a route for the servitude.
The trial court found for the plaintiff, ruling that the expropriation of the right of way was for a public and necessary purpose. It rendered judgment fixing the defendants' compensation at $50,743.50, denied defendants' motion for new trial, and denied them attorney's fees.
On appeal, the circuit court affirmed the ruling of the trial judge as to the public and necessary character of the expropriation.[1] As to the defendants' arguments regarding the selection of the route for the right of way, it found that the defendants had not shown that plaintiff was guilty of "fraud, bad faith or conduct or practices amounting to abuse of the privilege."[2] The appellate court further found that the $50,743.50 fixed as compensation by the district court did not constitute an abuse of discretion.
We granted certiorari[3] to consider whether the appellate court correctly interpreted La.R.S. 19:2(7), which authorizes electric companies to expropriate property, provided that the structures for which property is taken shall be located so as not to "interfere . . . more than is necessary, with the convenience of the landowners."[4]
*850 Although the original statute authorizing expropriation by electric power companies and setting forth criteria for the placement of the servitudes was enacted into our law in 1924,[5] the portion of the statute which requires consideration of the landowner's convenience in route selection has never been construed by this Court. It has, however, been considered on various occasions by the courts of appeal, with conflicting results.
The initial construction of La.R.S. 19:2(7) (then La.R.S. 19:2(9)) appears in a 1961 decision of the First Circuit Court of Appeal. In Central Louisiana Electric Company, Inc. v. Covington and St. Tammany Land & Improvement Co., 131 So.2d 369 (La.App. 1st Cir. 1961), the court was faced with a contention by a landowner that the expropriating authority had failed to consider his convenience in its placement of an overhead electric transmission line. While noting that the subsection of La.R.S. 19:2 which deals with electric utility companies is the only portion of that statute which requires consideration of the landowner's convenience, the court nevertheless relied on the frequently stated principle that "in the location of rights-of-way considerable discretion is vested in the expropriating authority and the courts will not disturb or interfere with the exercise thereof in the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege," id. at 375, and approved the route selected by the expropriating company.
In Louisiana Power & Light Company v. Anderson, 188 So.2d 733 (La.App. 2d Cir. 1966) the court cited the St. Tammany Land & Improvement Company decision in finding that the sole issue presented by a case involving an electric company expropriation was "whether the location of plaintiff's transmission line has been made in an arbitrary or capricious manner constituting an abuse of discretion or evidence of bad faith." It further stated that "the mere availability of alternate routes is not a determinative factor;" that La.R.S. 19:2(7) "must be reasonably construed and requires only the application of sound engineering and economic principles;" and that "courts will not disturb or interfere with the location of rights-of-way by condemnors in the absence of evidence that the privilege of expropriation has been abused." In a cogent dissent from the majority's opinion, however, Judge Bolin pointed out that no other law in Louisiana imposes restrictions on an expropriating authority similar to those set forth in La.R.S. 19:2(7). He further noted that the decision in the Covington case, relied upon by the majority, was based upon authorities from other jurisdictions and Louisiana cases involving expropriation of property for purposes other than the transmission of electric power. He asserted that the proper consideration is not "whether the location of plaintiff's transmission line has been made in an arbitrary or capricious manner constituting an abuse of discretion or evidence of bad faith," but *851 rather "whether [the expropriating authority] has complied with the mandatory requirements of [La.R.S. 19:2(7)]."
The rule enunciated by the court in the Covington case was approved and reaffirmed in Gulf States Utilities Company v. Heck, 191 So.2d 761 (La.App. 1st Cir. 1966), and again in Southwestern Electric Power Company v. Jones, 256 So.2d 677 (La.App. 2d Cir. 1972). In Southwest Louisiana Electric Membership Corporation v. Simon, 207 So.2d 546 (La.App. 3d Cir. 1968), however, the court on original hearing stated its belief that "the statute [La.R.S. 19:2(7)] requires the court to consider the landowner's safety and convenience as the primary consideration and the selection of location by the condemnor to be the secondary consideration." Although this statement was modified somewhat by the opinion on rehearing, in which the court reverted to a standard more akin to the arbitrariness requirements of Covington, the court nevertheless determined that the condemnor had failed to meet its statutory burden under La.R.S. 19:2(7). In Simon, therefore, the appellate court gave life to the legislative mandate that the convenience of the landowner, in addition to the engineering principles relied upon by the expropriating authority, is to be considered in the selection of a location upon which the improvements are to be placed.
In the instant case, the appellate court was again confronted with a contention by the defendants that the plaintiff company had failed to follow the provisions of the statute requiring a consideration of the landowner's convenience in the placement of the proposed electric power servitude. In response, the court relied upon Texas Eastern Transmission Corporation v. Bowie Lumber Company, 176 So.2d 735 (La.App. 1st Cir. 1965), writ denied 248 La. 385, 178 So.2d 663 (1965), for the proposition that "the selection of a route by the expropriating authority or agency will not be disturbed or upset except upon the showing by the party resisting the expropriation that the selection was made through fraud, bad faith or conduct or practices amounting to abuse of the privilege." Id. at 739.
A different rationale was employed by another panel of the appellate court in its decision in a companion case, Louisiana Power and Light Co. v. Caldwell, 353 So.2d 1343 (La.App. 1st Cir. 1977). There, the court stated:
"This expropriation proceeding was instituted pursuant to LSA-R.S. 19:2(7) which provides:
"`Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
"`* * *
"`(7) Any domestic or foreign corporation created for the purpose of generating, transmitting and distributing electricity and steam for power, lighting, heating, or other such uses. The generating plants, buildings, transmission lines, stations, and substations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire using companies or, more than is necessary, with the convenience of the landowners; * * *.'
"We note that of the nine categories under LSA-R.S. 19:2 authorized to expropriate needed property, it is only in category number 7 wherein there is any mention of the convenience of the landowners. Certainly, there must be some significance to this distinction and difference. "* * *
"Generally, the route selected must be based on sound engineering and economic principles, however, we conclude that under LSA-R.S. 19:2(7) the convenience of the landowner is an element that must be considered. "* * *,
"To disregard the added language of convenience of the landowners found in LSA-R.S. 19:2(7) and not found elsewhere in the expropriation authority granted by LSA-R.S. 9:2 would be to completely overlook the obvious intent of *852 the Legislature that the convenience of the landowners be taken into consideration in determining whether the expropriating authority has abused that discretion granted it.
"In determining whether the expropriating authority has abused the discretion granted it in route selection, all factors including sound engineering and economic principles as well as the inconvenience which the selected route may cause the landowner must be considered." 353 So.2d at 1345-1346. (Emphasis in original)
We agree that the clear wording of La.R.S. 19:2(7) evinces a legislative intent to require electric power companies which seek to expropriate land to consider the convenience of the landowner as an element of route selection. Indeed, the statute commands that the improvements for which property is expropriated shall be so located as not to interfere more than is necessary with the convenience of the landowners. It follows clearly, therefore, that a court must not approve an expropriation unless it determines from the evidence that there is no more interference than is necessary with the convenience of the landowners.
The reliance of the appellate court in the instant case on the decision in Texas Eastern Transmission Corporation v. Bowie Lumber Company, supra, is misplaced. In that case, the utility was a gas company which sought expropriation for a pipeline; La.R.S. 19:2(5), which authorizes such expropriations, does not condition a taking by a gas company upon the landowner's convenience.
Our consideration of the record in the case at bar reveals that the owner requested the power company to locate its transmission lines along the corridor of an existing gas pipeline servitude. The company refused; at trial, its expert stated that construction costs would be greater along the corridor than over the company route, since he estimated that the path suggested by the owner would result in the line being one-half mile to one mile longer. He did not, however, estimate the dollar amount by which the cost of the line would be increased; further, he conceded that use of the pipeline corridor would lessen clearing costs of the timber land although, again, he admitted that no research had been done to determine the effect on the total cost of construction.
In further justification of the plaintiff's route selection, the expert stated that the route proposed by defendant would not meet the needs of the plaintiff because the line would not then connect with a new electric substation which would be in the planning stage within a few years. Defendant, however, contended that the utility had not even attempted to prove public purpose and necessity for the proposed substation and that it should not, therefore, be allowed to use the positioning of the substation as a justification for its proposed route. During cross-examination by defense counsel, plaintiff's expert also admitted that no site had actually been chosen for the substation, but that it should "ideally" be located approximately half way between the Thibodaux and Houma substations.
Our examination of the record in the instant case satisfies us that defendants are correct in their assertion that the district court failed to determine if the proposed expropriation met the statutory requisite of being so located as not to interfere more than is necessary with the landowner's convenience. Since the record will not support our deciding this factual issue in favor of the plaintiff, we must set aside the judgment of expropriation. Normally, a dismissal of the plaintiff's suit with prejudice would be in order. However, considering that our decision today overturns the erroneous interpretation of La.R.S. 19:2(7) by the courts of appeal, it is likely that the parties did not litigate the issue as fully as our construction of the statute demands. Accordingly, in the interest of justice, we will remand this case to the trial court for the purposes of amending pleadings and redetermining the issue of whether the proposed *853 expropriation unnecessarily interferes with the landowners' convenience.[6]
The judgment of the court of appeal is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion.
SUMMERS, Justice.
While I agree with this opinion in all other particulars, I would dismiss plaintiff's suit with prejudice.
NOTES
[*] SUMMERS, J., would grant a limited rehearing in favor of defendant.
[1] 353 So.2d 371 (La.App. 1st Cir. 1977).
[2] Id. at 374.
[3] 354 So.2d 1374 (La.1978).
[4] La.R.S. 19:2, in its entirety, states:

"Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
"(1) The state or its political corporations or subdivisions created for the purpose of exercising any state governmental powers;
"(2) Any domestic or foreign corporation created for the construction of railroads, toll roads, or navigation canals;
"(3) Any domestic corporation created for the construction and operation of street railways, urban railways, or interurban railways;
"(4) Any domestic or foreign corporation created for the construction or operation of waterworks, filtration and treating plants, or sewerage plants to supply the public with water and sewerage;
"(5) Any domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas;
"(6) Any domestic or foreign corporation created for the purpose of transmitting intelligence by telegraph or telephone;
"(7) Any domestic or foreign corporation created for the purpose of generating, transmitting and distributing electricity and steam for power, lighting, heating, or other such uses. The generating plants, buildings, transmission lines, stations, and substations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire using companies or, more than is necessary, with the convenience of the landowners;
"(8) All persons included in the definition of common carrier pipelines as set forth in R.S. 45:251;
"(9) Any domestic or foreign corporation created for piping and marketing of coal or lignite in whatever form or mixture convenient for transportation within a pipeline as otherwise provided for in R.S. 30:721 through 30:723."
[5] By Act 110 of that year.
[6] See, La.C.C.P. art. 2164, and official revision comments following.