353 So.2d 1343 (1977)
LOUISIANA POWER & LIGHT COMPANY
v.
Jeanne Leche, wife of Vernon L. CALDWELL, Jr., et al.
No. 11577.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
Rehearing Denied November 21, 1977.
Writ Refused January 13, 1978.
*1344 Donald L. Peltier, Peltier & Peltier, Thibodaux, and Eugene G. Taggart, Monroe & Lemann, New Orleans, for plaintiff and appellant.
John F. Pugh, Pugh, Lanier & Pugh, Thibodaux, for defendants and appellees.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is an expropriation suit instituted by Louisiana Power & Light Company (LP&L), pursuant to LSA-R.S. 19:2(7), seeking a right of way across property belonging to the defendants, Jeanne Leche, wife of Vernon L. Caldwell, Jr., John Vernon Caldwell and Albert B. Caldwell. From a judgment of the Trial Court granting a right of way other than that selected by LP&L, plaintiff has appealed.
The property owned by defendants over which this right of way is sought is located in the northwest quadrant of the intersection of the old La. 20 and a blacktop parish road, generally referred to as the Forty Arpent Road, in Lafourche Parish, Louisiana. LP&L seeks to expropriate a right of way for its 230 KV transmission line along and adjacent to the Forty Arpent Road across defendants' property. The width of the right of way sought is 100 feet, with 40 feet of the 100 feet being inside the existing Forty Arpent Road right of way. The center line of the proposed right of way is 10 feet north of the north edge of the road right of way, with the power poles being located along the right of way center line and spaced approximately 500 feet apart. The function of the 230 KV line is to transport power between LP&L's Thibodaux electric substation[1] and LP&L's Terrebonne electric substation, located approximately 8 miles south of the city of Thibodaux.
As proposed, the LP&L route would leave the substation and travel south along the east side of La. 20 to the parish road, thence turn west along the north side of the parish road until the west boundary line of defendants' property where it would meet up with a right of way previously acquired by LP&L.
There is presently a 100 foot right of way owned by LP&L existing across defendants' property parallel to and approximately 2,300 feet north of the parish road. Defendants proposed that the 230 KV line be constructed adjacent to this existing right of way with the acquisition of only as much additional right of way as needed, up to their western boundary line, thence turning south along the western boundary line until the intersection of the western boundary line and the parish road, at which point this right of way would meet up with the previously acquired LP&L right of way. Defendants argue basically that their farming operations conducted on the subject property would be greatly disrupted by the LP&L proposal in that the headland located immediately north of the parish road would have to be reconstructed, and the crop spraying would be adversely affected by a powerline next to the road.
The Trial Judge in his written reasons for judgment found that "prior to the filing of the suit, defendants had requested that the right of way be located adjacent to an earlier right of way already in existence *1345 across their property." The Trial Judge further concluded "that the evidence does not indicate to this Court that plaintiff conducted bona fide negotiations with the landowner before planning its route or exercising its right of condemnation. As the Court recalls the testimony of Mr. Bauer the right of way south from the substation to the intersection of the black top road with the St. Patrick Highway was procured from the Leverts before they even contacted the defendants in the suit and apparently plaintiff determined the crossing spot without considering the reaction of defendants to this second invasion of their property."
The Trial Judge granted LP&L a right of way along the route suggested by defendants and awarded $22,500.00 as just compensation. In appealing LP&L contends the Trial Judge erred:
"(1) By substituting an alternate route for the one selected by the electric utility for the construction, operation and maintenance of its 230 KV transmission line.
"(2) By imposing upon the electric utility an alternate route which is not feasible from an economic and engineering standpoint and which does not fulfill the needs of the electric utility for the construction, operation and maintenance of its 230 KV transmission line.
"(3) By awarding expert fees for the defendants' real estate appraisers in amounts that are unduly excessive."

ERRORS NOS. 1 AND 2
In support of errors numbers 1 and 2, plaintiff-appellant basically argues that the route selected by LP&L is the best route from the standpoint of sound economic and engineering practices; that the alternate route is based on the convenience of the landowners; and that the Trial Court did not make any specific fact finding that the 230 KV line at the location selected by LP&L would be unsafe.
Generally it is well settled and recognized in condemnation proceedings that the expropriating authority's selection of the route or location will not be disturbed unless such authority has abused its discretion, acted in bad faith, or acted arbitrarily or unreasonably, Central La. El. Co. v. Covington & St. Tammany L. & I. Co., 131 So.2d 369 (La.App. 1st Cir. 1961). Some jurisdictions make a distinction between public and private expropriating authorities, 29A C.J.S. Eminent Domain § 90 (1965), however, in Louisiana no such distinction has been made. In addition, it is also settled that the availability of additional or alternate routes will not affect the authority's use of their selected route, Central La. El. Co. v. St. Tammany L. & I. Co., supra.
This expropriation proceeding was instituted pursuant to LSA-R.S. 19:2(7) which provides:
"Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
* * * * * *
"(7) Any domestic or foreign corporation created for the purpose of generating, transmitting and distributing electricity and steam for power, lighting, heating, or other such uses. The generating plants, buildings, transmission lines, stations, and substations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire using companies or, more than is necessary, with the convenience of the landowners; * * *." (Emphasis supplied).
We note that of the nine categories under LSA-R.S. 19:2 authorized to expropriate needed property, it is only in category number 7 wherein there is any mention of the convenience of the landowners. Certainly, there must be some significance to this distinction and difference.
Plaintiff-appellant cites to this Court the case of Central La. El. Co. v. Covington & St. Tammany L. & I. Co., supra, for the proposition that an electric utility company is not required to suit in detail the convenience of each owner and to *1346 protect him from all possible danger. We do not disagree with this rule, however, each case must be determined by its own facts.
Generally, the route selected must be based on sound engineering and economic principles, however, we conclude that under LSA-R.S. 19:2(7) the convenience of the landowner is an element that must be considered.
In discussing LSA-R.S. 19:2(7), and in particular the convenience of the landowner, the Court in Southwest Louisiana Electric Mem. Corp. v. Simon, 207 So.2d 546, 553 (La.App. 3rd Cir. 1967), writ refused, 252 La. 104, 209 So.2d 37 (1968) for reasons that judgment was not final, said:
"The necessity for expropriation for public purposes or in the public interest relegates the landowner's right to all of the aspects of his ownership to a secondary position. But we think it clear that the statute requires the court to consider the landowner's safety and convenience as the primary consideration and the selection of location by the condemnor to be the secondary consideration."
To disregard the added language of convenience of the landowners found in LSA-R.S. 9:2(7) and not found elsewhere in the expropriation authority granted by LSA-R.S. 9:2 would be to completely overlook the obvious intent of the Legislature that the convenience of the landowners be taken into consideration in determining whether the expropriating authority has abused that discretion granted it.
In determining whether the expropriating authority has abused the discretion granted it in route selection, all factors including sound engineering and economic principles as well as the inconvenience which the selected route may cause the landowner must be considered. "[I]t must be shown that the convenience of the landowner was not completely ignored by the condemnor in the selection of the route; and, where the record indicates that an alternate route is much more safe and convenient to the landowner without any unreasonable inconvenience to the condemnor, this court is of the opinion that such alternate route should be used." Southwest Louisiana Electric Mem. Corp. v. Simon, supra at 561. In analyzing the reasons the plaintiff-appellant rejected the alternate route offered by defendants, the Trial Judge in written reasons said:
"Mr. Michael Bauer, Jr., transmission engineering supervisor for plaintiff, selected the route which plaintiff wishes established and rejected defendants' request to erect the line adjacent to the present H line for several reasons: a) The proposed route was more economical (for plaintiff). b) It required less right of way for defendants. c) It would cause minimal interference with the farming operations of defendants. d) In event of a hurricane there would be no danger of one line falling into another and putting out the whole system. e) It would not interfere with crop dusting. f) Construction would be easier and the construction would cause less interference to the farming operation. g) It was in a better position for a future tie-in with the City of Thibodaux. h) It would be 500 feet shorter than following along the H line. On cross-examination however Mr. Bauer negated some of these reasons by admitting that the new line would not necessarily be a hazard if erected next to the H line and there would be no electrical or construction problem in putting them next to each other. He further opined that crop dusters are not concerned with lines as long as they are aware of them. It would seem to the court on this point that there is a distinction to be made between whether a crop duster is `concerned' with a line in place or whether it interferes with a proper method of crop dusting. At any rate an analysis of the reasons would appear to greatly favor the plaintiff without being overly concerned with inconvenience to the defendants."
In reviewing this record, the only evidence we find to support plaintiff-appellant's argument that its route is more economical is the general statement that it would be. There is no indication how much *1347 less expensive plaintiff's route would be vis-a-vis defendants'. It is true that plaintiff's route would require less right of way from defendants, but we question the validity of this argument, when defendants offer more right of way in order to avoid major inconvenience with their farming operations. Two pilots, one from each side, testified as to the inconvenience caused by location of the line next to the parish road. The Trial Judge obviously believed the argument presented by defendants' pilot when the pilot said that it would be better to have a new line next to the existing line inasmuch as flying under a line located next to a highway can cause problems for the motoring public. We certainly feel that the Trial Judge was reasonable and not in error in this conclusion. All in all, the evidence viewed in its entirety, we, too, conclude that the convenience of the landowner is best served by the alternate route, and it is not an unreasonable burden on the plaintiff that this route be selected.
We are impressed with the fact that for some time previous to this expropriation plaintiff has enjoyed a 100 foot wide right of way across defendants' land, running in a generally east-west direction, approximately 2,300 feet north of and parallel to the Parish Road. To allow LP&L to expropriate an additional right of way across defendants' land without giving any serious consideration to a partial utilization of the existing right of way, and attempting to group these electric lines in a corridor so as to minimize the inconvenience to the landowner, would be to completely pay no attention to the convenience to the landowners language found in LSA-R.S. 19:2(7).
In times past when it was considered that only one right of way would be sought from a landowner, the public was not as concerned with the disruption to the land or inconvenience to the landowner that was caused thereby. However, as our population increased, the increased demand for utility services has required the laying of new lines, the seeking of new and additional rights of way, and the reasonable possibility that it will be necessary to again cross land previously crossed. Is it not a reasonable approach to require that this continual carving up of individual parcels of land be held to a minimum by requiring the use of corridors? The convenience to the landowners exercised with reason by the Court would demand such. LSA-R.S. 19:2(7).
We, therefore, find no error on the part of the Trial Judge in his selection of this alternate route proposed by the defendants. It is, however, brought to the Court's attention by plaintiff, without any dispute by defendants, that the route approved by the Trial Judge is deficient in that it does not provide sufficiently for land for guy wire anchor locations at the corners, or an adequate and appropriate exit route from the substation to the east-west traverse of defendants' property. We agree. Therefore, we remand this case to the Trial Court for the limited purpose of allowing the introduction of additional evidence to properly locate and describe the additional land needed, as well as damages for the taking thereof.

ERROR NO. 3
Plaintiff-appellant lastly argues that the expert witness fees awarded defendants' experts were excessive and amount to an abuse of discretion. The Trial Court fixed the fee of John W. Dugan at $2,700.00 for 9 days at $300.00 per day, and the fee of Preston Babineaux at $4,000.00, or 13 days at $350.00 per day. The Trial Judge found as a matter of fact that Mr. Dugan devoted 9 days to his appraisal and Mr. Babineaux 13 days. With this conclusion we can find no error, however, we are of the opinion that the Trial Judge was excessive in his award on a daily basis and reduce same to the rate of $200.00 per day each, or for John W. Dugan, $1,800.00 and Preston Babineaux, $2,600.00. Louisiana Intrastate Gas Corp. v. Girouard, 336 So.2d 1042 (La.App. 3rd Cir. 1976); Southwest Louisiana Electric Mem. Corp. v. Huval, 317 So.2d 264 (La.App. 3rd Cir. 1975), writ refused 320 So.2d 913 (1975).

*1348 DAMAGES
Plaintiff-appellant does not assign as error the award made by the Trial Judge for the taking of the alternate route. In seeking a reversal of the award of the alternate route, plaintiff-appellant does discuss at length in brief the proper award for its proposed route. Inasmuch as we agree with the Trial Judge in his award of the alternate route, and appellant does not assign as error the award for such taking there is no need for this Court to discuss the award made.
Therefore, for the above and foregoing reasons, IT IS ORDERED ADJUDGED and DECREED that the judgment of the Trial Court be and it is hereby amended to reduce the expert witness fees of John W. Dugan to $1,800.00 and Preston Babineaux to $2,600.00, and as amended it is affirmed; IT IS FURTHER ADJUDGED and DECREED that this matter be and it is hereby remanded to the Trial Court for the limited purpose of the taking of additional evidence in accordance with the views expressed hereinabove. All costs of this proceeding are assessed to plaintiff-appellant.
AMENDED, AFFIRMED AND REMANDED.
PONDER, Judge, concurring in part and dissenting in part.
I agree with the reduction of the fees awarded to the appraisers.
I disagree, however, with the affirmation of the trial court's substitution of routes.
". . . in the location of rights-of-way considerable discretion is vested in the expropriating authority and the courts will not disturb or interfere with the exercise thereof in the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege." Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co. (1st Cir., 1961), 131 So.2d 369 at page 375.
I have been unable to find fraud, bad faith or conduct or practices amounting to an abuse of the privilege in this record.
The reliance by the trial court and my brothers on Southwest Louisiana Electric Mem. Corp. v. Simon, (3rd Cir., 1967) 207 So.2d 546, writ refused, 252 La. 104, 209 So.2d 37 (1968), for the reason that the judgment was not final, I believe to be misplaced. The quotation therefrom in the above opinion was from the first rehearing. The effect was somewhat lessened by the following on rehearing:
"We did not hold in the original opinion, and we do not hold now, that the condemnor must negotiate with each landowner in the selection of a site; however, it must be shown that the convenience of the landowner was not completely ignored by the condemnor in the selection of the route; and, where the record indicates that an alternate route is much more safe and convenient to the landowner without any unreasonable inconvenience to the condemnor, this court is of the opinion that such alternate route should be used."
I therefore dissent.
NOTES
[1] This substation is located on the east side of La. 20 approximately 2000 feet north of its intersection with the Forty Arpent Road.