357 So.2d 1251 (1978)
CLAIBORNE ELECTRIC COOPERATIVE, INC., Plaintiff-Appellant-Appellee,
v.
Felix Gordon GARRETT et al., Defendants-Appellants-Appellees.
CLAIBORNE ELECTRIC COOPERATIVE, INC., Plaintiff-Appellant-Appellee,
v.
Mrs. Alicegene McKENZIE et al., Defendants-Appellants-Appellees.
Nos. 13515 and 13516.
Court of Appeal of Louisiana, Second Circuit.
March 27, 1978.
Rehearing Denied May 10, 1978.
Writ Refused June 30, 1978.
*1253 Shaw & Shaw, Homer by James R. Hatch, Jonesboro, for plaintiff-appellant-appellee.
Sanders & Castete, Ltd. by Martin S. Sanders, Jr., Winnfield, for defendants-appellants-appellees.
Before BOLIN, PRICE and HALL, JJ.
En Banc. Rehearing Denied May 10, 1978.
BOLIN, Judge.
To meet the increased demand for electric power in the Lake Claiborne area, plaintiff planned a ten-mile-long 69 KV transmission and distribution line of single pole construction from an already existing to a proposed electric substation. Alleging inability to obtain rights of way across defendant landowners' property by conventional agreement, plaintiff instituted these expropriation proceedings pursuant to Louisiana Revised Statutes 19:2(7).[1]

* * * * * *
*1254 The trial court consolidated for trial suits against two groups of landowners, but rendered separate judgments in each case. Plaintiff and the defendants in each suit have appealed or answered the appeals from judgments which granted plaintiff servitudes and awarded defendant landowners compensation for the takings, severance damages, attorney and expert witness fees. We amend the judgments by reducing the amount awarded for severance damages in No. 13,515, and by reducing expert witness fees and increasing attorney fees in both cases; otherwise, we affirm.
The multiple issues relative to procedural and substantive matters will be discussed separately.

MOTIONS TO DISMISS
The trial court signed judgments in both cases on July 19, 1977. Plaintiff appealed the judgments the same day, and perfected its appeals by posting devolutive bonds of $500 on July 22. On July 26, defendant landowners filed motions for new trials. New trials were granted and the July judgments were ordered held in abeyance pending decisions; judgments identical to the July 19 judgments, with the exception of increased attorney fees in both cases, were signed on November 8. Plaintiff and defendants timely perfected appeals from the November judgments. Also, after the records were lodged in this court, defendants timely answered plaintiff's appeals from the July judgments.
Defendants moved to dismiss the original appeals of plaintiff as premature, since those appeals were taken from judgments subsequently ordered held in abeyance. We find no merit in this contention, which would penalize plaintiff for promptly perfecting its appeals.
After argument before this court the Garrett defendants (No. 13,515) filed a second motion to dismiss plaintiff's appeal, contending Claiborne Electric had already cleared a right of way across their property and "otherwise effected a complete taking." Since this motion to dismiss was not timely filed, it will not be considered. Louisiana Code of Civil Procedure Article 2161.

NEW TRIAL PROCEDURE
Plaintiff assigns as error the granting of new trials in these expropriation proceedings, contending this procedure is not available under the explicit terms of La.R.S. 19:13, as amended by Acts 1974, Ex.Sess., No. 11:
. . . The whole of the judgment, however, shall be subject to the decision of the appellate court on review under a devolutive appeal, and the delays for taking such appeal shall commence upon the signing of the judgment determining compensation. (Emphasis added)
Plaintiff argues forcefully that the sixty-day period for perfecting a devolutive appeal begins to run on the date judgment is signed in an expropriation proceeding governed by Part I of Title 19, not after the expiration of delays for new trial as provided by La.C.C.P. Art. 2087; that this variance was intended to expedite these expropriation proceedings, which are summary in nature. See La.C.C.P. Art. 2081; Columbia Gulf Transmission Co. v. C. J. Grayson, Inc., 232 So.2d 150 (La.App.2d Cir., 1970).
Assuming arguendo the new trial procedure is inappropriate, plaintiff and defendants in both suits are nevertheless before this court; plaintiff perfected appeals from the July judgments and defendants timely answered those appeals in this court. The answers present the questions of the inadequacy of both compensation and attorney fees awarded by the trial court, which is also the relief defendants sought by appealing the later judgments. We therefore choose to set aside the second judgments; *1255 we amend and affirm the judgments of July 19, 1977.

PREMATURITY
Defendants timely excepted to Claiborne Electric's initiation of judicial proceedings as premature, based on plaintiff's alleged failure to adequately negotiate in good faith with the landowners. The McKenzie defendants (No. 13,516) complain of failure to negotiate about price; the Garretts (No. 13,315), about both price and the location of the right of way. The trial court found adequate negotiation and overruled the exceptions.
The record shows plaintiff's agents contacted defendants' representatives, explained the route proposed by plaintiff's engineer, and offered $300 an acre for the right of way. Plaintiff was able to purchase rights of way over the other tracts along the proposed route for $300 an acre. Plaintiff's attorney contacted both the Garrett and McKenzie representatives and discussed location. Although plaintiff did not yield from its proposed route, the testimony reveals an alternate route was considered before being rejected by the expropriating authority as not feasible.
We hold there was a good faith attempt to acquire the rights of way by conventional agreement; plaintiff was not required to increase its original offer, nor change its proposed route at defendants' request. Dixie Pipeline Company v. Barry, 227 So.2d 1 (La.App.3d Cir., 1969). The trial court was correct in overruling the exception of prematurity.

NECESSITY OF THE GARRETT TAKING
In No. 13,515, the defendants argue the requirement of Article I, Section 4 of the 1974 Louisiana Constitution, i. e., that private utilities only expropriate for a public and necessary purpose,[2] places the burden on the expropriating authority to prove the particular route chosen was necessary; that, since plaintiff failed to prove it was necessary to traverse defendants' property rather than locate the transmission line elsewhere, its suit should have been dismissed.
Although the 1974 Constitution did add the word "necessary," the context of Article I, Section 4 indicates this refers to the necessity of the purpose for the expropriation, not the necessity for a specific location of the servitude. Since plaintiff has alleged and shown the need for increased electrical power in the Lake Claiborne area, defendants' contention lacks merit.

CONVENIENCE OF THE LANDOWNERS
Defendants in both cases complain plaintiff did not consider the landowners' convenience in mapping out its proposed route for the transmission line. La.R.S. 19:2(7). We agree that safety and convenience are primary considerations, but find the utility's route location was within its sound discretion, not planned in bad faith, arbitrarily or unreasonably. Louisiana Power & Light Co. v. Caldwell, 353 So.2d 1343 (La.App.1st Cir., 1977).
*1256 In the Caldwell case, which defendants cite to support their contention that plaintiff here abused its discretion by ignoring the inconvenience to the landowners, the court affirmed the trial court's judgment which had varied the right of way selected by the power company. The facts of Caldwell show plaintiff utility company's proposed route would cause a major inconvenience to the landowners' farming operations, particularly crop dusting. Furthermore, the alternate route in the corridor of already existing rights of way placed no unreasonable burden on the power company. Under these circumstances, the trial court and court of appeal found the route proposed by plaintiff utility company interfered, more than was necessary, with the convenience of the landowners.
In the present case, engineering considerations largely dictated the proposed route for the transmission line. Additionally, plaintiff's general manager testified this route was viewed as least damaging to the environment and the properties traversed. A conscious effort was made to utilize open territory, rather than heavy timberland, wherever feasible. The project engineer claimed the straight line direction was best for land utilization, since it obviated the need for troublesome guy wires and supports by eliminating numerous dogleg turns.
Since plaintiff offered minimal evidence to show it considered defendants' convenience, and since defendants offered no expert testimony to support a finding of major inconvenience, we follow the general rule and choose not to disturb the expropriating authority's selection of a route. See Louisiana Power & Light Co. v. Caldwell, supra; Southwestern Electric Power Company v. Conger, 307 So.2d 380 (La.App.2d Cir., 1975).

COMPENSATION FOR THE TAKING
A. The Garrett Property
The transmission line will cross two separate parcels of property owned in indivision by the Garrett defendants (No. 13,515). A servitude 100 feet wide will be required across both tracts, which the parties and the trial court designated "Tract No. 1" and "Tract No. 2."
The total area of the taking in Tract No. 1 amounts to 2.89 acres. All the expert appraisers agreed this tract's highest and best use was for growing timber. Estimates of just compensation ranged from $975 by plaintiff's appraiser to $1,878.50 by one of defendants' appraisers. The appraisers for defendants considered the loss from the taking at 100% of value on this and all other expropriated portions; plaintiff's expert thought the landowners retained 25% of the value of the expropriated strips of land.
The trial court valued this tract at $500 an acre. Since the court determined defendants retained some use of the land taken, it found they were entitled to 90% of the actual market value of this 100-foot-wide strip. Accordingly, the court awarded defendants $1,300.50 as just compensation. We find no error in this award.
Tract No. 2 fronted on a two-lane state highway. Plaintiff's appraiser considered the value of this 2.34 acre parcel enhanced due to this highway frontage, but considered it timber property and limited its per acre value to $600. This computed to $1,053 as just compensation for the area taken. One of defendants' experts quoted a lump sum compensation figure of $1,521, while the other divided Tract No. 2 into a front use, residential portion of 1.136 acres valued at $1,800 an acre, and 1.754 acres of "timber-farmland" with a per acre value of $615. This expert calculated a compensation figure of $3,124.[3]
*1257 The trial court valued this tract at $750 an acre. Since the owners retained some use of the land taken, the court awarded 90% of the value or $1,579.50 for this parcel. Based on all the evidence, we find this award reasonable.
B. The McKenzie Property
The transmission line would require the taking of 4.33 acres of McKenzie property. The appraisals of just compensation ranged from a low of $1,137 by plaintiff's expert, who valued the entire tract as timber property worth $350 per acre, to $10,825 by one of defendants' appraisers, who recognized a combined best use of timber growth and rural homesites for the tract.
The trial court recognized the wide disparity in appraisals in his reasons for judgment and arrived at a value of $750 per acre. Granting defendants 90% of actual market value, the court awarded these landowners $2,922.75 as compensation for the 4.33 acres taken. We will not disturb this portion of the judgment.

SEVERANCE DAMAGES
The trial court reasoned that a strip of land 100 feet wide on either side of the servitude would suffer a diminished market value due to its proximity to a high voltage transmission line; that this diminution for timber and pasture land would amount to 30% of market value; that the strip through the property with rural residential potential would suffer a 40% diminution in value due to "the psychological effect on any purchaser or user of property this close to the transmission line."
Plaintiff's appraiser considered the highest and best use of all defendants' properties to be growing and harvesting timber. He concluded there would be no severance damage caused by the taking or by the presence of the transmission line.
Defendants' experts calculated a percentage of damage to remaining timber areas on all tracts; one appraiser testified the high voltage line's proximity to a future timber plantation would inconvenience and render dangerous future crop dusting operations. This opinion is highly speculative and unsupported by testimony of a forester or crop dusting expert.
Since the parties agree the best use of Garrett Tract No. 1 is timberland, and since there is insufficient evidence that future timber operations would be hindered or inconvenienced by the presence of plaintiff's high voltage line, we reverse the award of $2,601 severance damage for this tract.[4]
Garrett Tract No. 2 contains substantial frontage on Louisiana Highway 146, a two-lane thoroughfare running generally east and west between the town of Homer and Lake Claiborne. This parcel contains 2.34 acres located approximately one-quarter of a mile west of the lake, an increasingly popular recreational attraction in North Louisiana. The record shows rural homes have already been constructed on sites directly across the highway from this property. Although plaintiff's appraiser testified the Garrett property was unsuitable for this kind of development due to its low-lying situation, two appraisers for defendants referred to its desirability as rural homesites.
There is evidence to support the trial court's finding that Garrett Tract No. 2 has residential use potential. The calculation of severance damages, based on the psychological impact a high voltage transmission line would have on prospective buyers of neighboring property, finds support in the testimony of defendants' real estate appraisers. Consideration of this "desirability factor" of market value is also legally sound. Southwest La. Elec. Membership Corp. v. Dupuis, 345 So.2d 1280 (La.App.3d Cir., 1977); Southwest Louisiana Electric *1258 Mem. Corp. v. Huval, 317 So.2d 264 (La. App.3d Cir., 1975).
The determination that market value was affected only to the extent of 100-foot strips adjacent to the right of way reflects a recognition that the diminution in value results from an intangible, psychological factor; the prospective buyer becomes less concerned about the effect of a highline on property more remotely located. See Southwest La. Elec. Membership Corp. v. Dupuis, supra, at 1282.
We find the calculation of 40% of market value as severance damage to the 4.68 acres of Garrett Tract No. 2 adjacent to plaintiff's right of way is a reasonable conclusion from the evidence. However, the trial court, in awarding $1,123.20, valued these 100-foot strips at $600 per acre. Since the court previously had determined (for purposes of calculating compensation for the taking) that this tract had a per acre value of $750, we increase the amount of severance damage due the Garrett defendants for this tract to $1,404.[5]
The McKenzie property contained 1,900 feet of frontage on Highway 146. The trial court considered this tract, located approximately three miles west of Lake Claiborne, suitable for rural homesites and calculated severance damage in the same manner as it had previously done for Garrett Tract No. 2. For the reasons previously stated in our discussion of the Garrett tract, we affirm the trial court's award of $2,550 as severance damage to the McKenzie property.[6]

ATTORNEY FEES
La.R.S. 19:8, as amended, permits the court to award defendant landowners reasonable attorney fees if the highest amount offered by the expropriating authority is less than the compensation awarded.[7] Plaintiff contends this statute allows attorney fees only in those cases where compensation is determined by a jury, and then only after the trial of a contradictory motion.
Defendants in these consolidated cases petitioned for reasonable attorney fees; they did not request a jury trial on issues of compensation. The district judge, who sat as trier of all the issues, was aware of the disparity between the amount offered by plaintiff and the compensation awarded; trial of a contradictory motion on this issue would be a useless exercise under the circumstances presented here.
We hold defendant landowners are entitled to reasonable attorney fees in any case in which the highest amount offered is less than that obtained through the landowners' judicial assertion of their rights. This interpretation of the statute does not do violence to its language.
*1259 Defendants in both cases contend the amounts awarded for attorney fees were inadequate. The records before this court support this contention as to the amounts awarded in the original judgments. Therefore, we increase attorney fees in the Garrett case (No. 13,515) to $2,500; in the McKenzie case (No. 13,516), we find $1,750 to be reasonable compensation for the services rendered by defendants' attorney. The trial judge obviously thought such awards were justified since these are the amounts he fixed in the second judgments.

EXPERT APPRAISER FEES
In No. 13,515, the trial court awarded defendants' two real estate experts $900 each as compensation for their preparatory work and testimony in court. The fees granted these two appraisers in No. 13,516 were also $900 each. We find the combined award of $1,800 to each appraiser is excessive under the evidence presented.
Appraiser Stephens testified he spent a total of two days in preparation for both cases. We consider $200 per day reasonable compensation for this preparatory work. Stephens' itemized bill lists an additional $250 for court appearances (two days at $125 per day), and $200 for travel and miscellaneous expenses connected with his work. We conclude $850 will adequately compensate appraiser Stephens for his work in both cases. Since this appraiser did not present evidence of a greater expenditure of time in one case than in the other, we reduce his fee to $425 in each case. See Louisiana Power & Light Co. v. Caldwell, supra.
Appraiser Bass provided the court with only a lump sum statement of his charges $1,000 in the Garrett case and $800 in the McKenzie case. However, the record shows his testimony was helpful in the court's determination of value in both cases. We therefore fix his fee at $500 in No. 13,515 and $400 in No. 13,516 and assess these amounts as costs to be paid by plaintiff.

EXPERT WITNESS NOT LISTED IN PRE-TRIAL STATEMENT
Plaintiff complains the trial court erred in permitting one forester to testify for defendant landowners concerning timber values, after another forester had been listed in the pre-trial stipulation. Plaintiff also contends an inference adverse to defendants' claims of property value arose from the failure of the stipulated expert to testify.
The expert testimony of the substituted forester did not surprise plaintiff, nor did it serve as the basis for an award to the landowners. If there was any error, it was harmless. Likewise, even if we assume the listed expert would have testified unfavorably to defendants, the preponderance of the evidence would nevertheless overcome this adverse inference.

JUDGMENT
The judgments of November 8, 1977 in No. 13,515 and No. 13,516 are set aside.
In No. 13,515, Claiborne Electric Cooperative, Inc. v. Felix Gordon Garrett et al., the judgment of July 19, 1977 is amended to delete the award of $2,601.00 for severance damage to Tract No. 1, and to increase the award to $1,404.00 for severance damage to Tract No. 2; to increase the award of attorney fees to $2,500; and to fix the fees of T. J. Stephens at $425 and H. L. Bass at $500. In all other respects, this judgment is affirmed at plaintiff's cost.
In No. 13,516, Claiborne Electric Cooperative, Inc. v. Mrs. Alicegene McKenzie et al., the judgment of July 19, 1977 is amended to increase the award of attorney fees to $1,750 and to fix the fees of T. J. Stephens at $425 and H. L. Bass at $400. In all other respects, this judgment is affirmed at plaintiff's cost.
NOTES
[1] § 2.

Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
(7) Any domestic or foreign corporation created for the purpose of generating, transmitting and distributing electricity and steam for power, lighting, heating, or other such uses. The generating plants, buildings, transmission lines, stations, and substations expropriated or for which property was expropriated shall be so located, constructed, operated, and maintained as not to be dangerous to persons or property nor interfere with the use of the wires of other wire using companies or, more than is necessary, with the convenience of the landowners;
[2] Section 4. Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.

Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes. (Emphasis added)
[3] The calculations of defendants' appraiser Stephens are suspect. He found the taken area in Tract No. 2 contained 2.89 acres, whereas plaintiff's appraiser and defendants' appraiser Bass calculated this taking as 2.34 acres. Accordingly, Stephens' $3,124 total value of the land taken is to compensate for acreage in excess of that actually taken from Tract No. 2. The 2.89 acres corresponds with the area taken from the interior, timber Tract No. 1, which Stephens valued at $584 an acre.
[4] The trial court intended to award 30% of a $500 per acre market value for 5.78 acres contained in two 100-foot-wide strips on this tract. Its calculation of $2,601 severance damages, however, amounts to 90% of actual value (the percentage used as compensation for the expropriated area). Had we affirmed severance damages for this parcel, therefore, we would have been compelled to reduce the award to $867 in compliance with the trial court's reasons for judgment.
[5] The trial court gave no explanation for its differing valuations of this property for purposes of compensation for the taking and severance damages to the remainder. We know of no law that would permit this inconsistency.
[6] The trial court found 8.5 acres in two 100-foot-wide strips adjacent to the right of way, and multiplied this acreage by 40% of the market value ($750).
[7] Acts 1974, Ex.Sess., No. 11, providing in part:

§ 8. Trial in or out of term with dispatch, judgment; appraisals; payment in court registry
A. Expropriation suits shall be tried in term time or in vacation and shall be conducted with preference and with the greatest possible dispatch. Judgments may be signed in term time or in vacation. All issues shall be decided by the trial judge. However, when a jury trial has been demanded, the judge shall hear the evidence on all issues, other than the measure of compensation and shall render a decision within five days. If the trial judge decides in favor of the expropriating authority, then within thirty days after such decision, a jury shall be impaneled to determine the measure of compensation. Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property prior to trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees. The expropriating authority shall not be entitled to possession or ownership of the property until a final judgement has been rendered and payment has been made to the owner or paid into the registry of the court, except as may otherwise be stipulated by the parties.